[No. F003714. Fifth Dist. Dec. 17, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
ADDO WILKERSON WILLIAMS, JR., Defendant and Appellant.

## COUNSEL

Betty L. Dawson, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and William G. Prahl, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**THE COURT.** *—On January 4, 1984, defendant was convicted of robbery (Pen. Code, § 211). The trial court suspended imposition of sentence and granted defendant's application for probation. Defendant's appeal raises the issue of whether or not the trial court erred in failing to instruct the jury *sua sponte* on the sufficiency of the circumstantial evidence. (CALJIC No. 2.01 (4th ed. 1979).)[1]

---

*Before Franson, Acting P. J., Hamlin, J., and Best, J.

[1] All CALJIC instructions referred to are from the fourth edition (1979) unless otherwise noted.

Between 9:30 and 10 p.m. on August 19, 1983, Mr. Thomas Tigner walked to Bud's Liquor Store (Bud's) in Atwater to rent a VCR (video cassette recorder) and tapes. After renting the equipment, Tigner left the store and began to walk to his home a few blocks away. As he proceeded toward his home, Tigner had the VCR under his right arm and an athletic bag containing the rented tapes, electric cords to the VCR, clothing, a checkbook and a calculator over his left arm.

When he was approximately two blocks away from the liquor store, Tigner heard footsteps behind him and turned to see two men running towards him. As the two men reached Tigner, one of the men tried to grab the VCR. Just then, a couple of cars drove by and the two men ran around the corner as Tigner ran to the middle of the street in the hope that more cars would come by.

After the two cars drove by, the two men reappeared. One of the men grabbed Tigner's shoulder bag and pulled it away from him. The two assailants then departed without obtaining the VCR and Tigner returned to Bud's.

Tigner recognized his assailants as two men he had seen in Bud's while he was renting the VCR. Tigner subsequently identified one of the men as Leon Curenton but could not conclusively identify his other assailant. Curenton, however, was arrested, confessed and indicated that defendant was his accomplice in the crime. Later, after pleading guilty to grand theft from a person, Curenton testified against defendant.

According to Curenton's testimony, he had gone to Bud's the night of August 19 in the company of his girlfriend, Annette Moore, and two other friends—Tanya Rice and Eddy Foster. While they were there, defendant entered the store and Tanya approached defendant to talk to him about the jewelry he was wearing. Curenton, who recognized defendant from Castle Air Force Base where they were both stationed, joined the conversation. After the conversation broke up, defendant left the store but subsequently reentered and asked Curenton to step outside with him. Defendant pointed to Tigner walking down the street and encouraged Curenton to join him in obtaining the VCR from Tigner.

The two men trotted down the street and attempted to wrestle the VCR and shoulder bag away from Tigner. Although not successful in obtaining the VCR, defendant did manage to obtain the shoulder bag and the two men ran away through an apartment building's parking lot, a trailer park and back to Bud's.

At Bud's, they saw that Tigner was already inside. Defendant retrieved his car and picked up the companion who had originally been with him at Bud's, Robert Sweeney. Defendant and Sweeney then picked up Curenton in a nearby trailer park. Once in the car, Curenton went through the contents of the bag and left it in the back seat of defendant's car when he was dropped off at his apartment.

Because Curenton and defendant were accomplices (Pen. Code, § 1111), corroborating evidence which tended to connect defendant with the commission of the crime was needed in order to procure his conviction. (*Ibid.*) The corroborative evidence produced at trial consisted of the following.

Robert Sweeney testified that he had been with defendant at Bud's on the night of August 19. Upon entering the store, they noticed that the store was now renting VCR equipment. They had a brief discussion and both agreed that they would like to have a VCR. Sweeney then moved to the liquor display and defendant went to the middle of the store where he was approached by a woman who spoke to him about the jewelry he was wearing. While defendant and the young woman were talking, Curenton joined them. Defendant and Curenton then stepped outside and talked a little bit. Apparently concerned about his ride, Sweeney went to the door and asked defendant if he was leaving and defendant told Sweeney that "he'd be right there." Sweeney then returned to the store and when he looked up again, defendant and his companion were gone. Sweeney returned to the door and looked out but did not see defendant or the other man.

Approximately five to ten minutes later, Sweeney left the store intending to walk home. As he stood on the street corner in front of Bud's, he heard defendant call his name. He turned and saw defendant sitting in his car. They then drove to a nearby trailer park where they picked up Curenton and gave him a ride home.

Although Sweeney did not actually see an athletic bag, he heard the sound of a zipper being opened and saw a checkbook and calculator. Curenton stated that he wanted the calculator and asked defendant whether he wanted any of the other contents in the bag to which defendant responded that he did not.

Curenton's girlfriend, Annette Moore, testified that she saw Curenton and defendant talking together in front of Bud's and subsequently Curenton came back into the store and said that he would meet his companions back at his apartment. Annette and Tanya then went to the door of the liquor store and saw Curenton and defendant running down the street together.

■ Although the trial court did instruct the jury that testimony from an accomplice must be viewed with distrust (CALJIC No. 3.18); that such testimony must be corroborated (CALJIC No. 3.11); and on the sufficiency of evidence needed to corroborate an accomplice (CALJIC No. 3.12), defendant argues that because the corroborative evidence was circumstantial, the trial court should have instructed *sua sponte* on the sufficiency of circumstantial evidence to prove guilt pursuant to CALJIC No. 2.01.

■ Initially, defendant acknowledges that the instruction (CALJIC No. 2.01), need not be given when circumstantial evidence is only incidental to and corroborative of direct evidence. (*People* v. *Jerman* (1946) 29 Cal.2d 189, 197 [173 P.2d 805].) The instruction, defendant points out, is to be given, however, when the prosecution substantially relies on circumstantial evidence for proof of guilt. (*People* v. *Wiley* (1976) 18 Cal.3d 162, 174-175 [133 Cal.Rptr. 135, 554 P.2d 881].) The rationale for refusing to give the instruction when the circumstantial evidence is only incidental and corroborative of direct evidence, is the danger of confusing the jury when the inculpatory evidence consists wholly or largely of direct evidence of the crime. (*People* v. *Jerman, supra,* 29 Cal.2d at p. 197.)

■ Here, defendant argues that because the corroborative evidence was essential in order to procure his conviction (Pen. Code, § 1111), and the corroborative evidence was circumstantial evidence, the prosecution did in fact substantially rely upon circumstantial evidence and the instruction should have been given.

Although it is true corroborative evidence was essential in procuring defendant's conviction and the prosecution did rely on circumstantial evidence as the corroborating evidence, the fact of the matter is that in the instant case the circumstantial evidence was *corroborating evidence* that was not "substantially relied" upon by the prosecution. The type of case which requires the jury to be instructed pursuant to CALJIC No. 2.01 is one in which circumstantial evidence is "substantially relied upon for proof of guilt. . . ." (*People* v. *Yrigoyen* (1955) 45 Cal.2d 46, 49 [286 P.2d 1].) ■ "The instruction should not be given 'when the problem of inferring guilt from a pattern of incriminating circumstances is not present.' (*People* v. *Gould* (1960) 54 Cal.2d 621, 629. . . .)" (*People* v. *Wiley, supra,* 18 Cal.3d at p. 174.) ■ The fact that the instant case was not an appropriate case for instructing the jury pursuant to CALJIC No. 2.01 is cogently illustrated by comparing the characteristics of evidence which will suffice as corroborating evidence, with the characteristics of circumstantial evidence needed to establish guilt under CALJIC No. 2.01.

■ Corroborative evidence is sufficient as long as it creates more than a suspicion of guilt, even if it is slight or entitled to little weight, standing

alone. (*People* v. *Wilson* (1944) 25 Cal.2d 341, 347 [153 P.2d 720].) Corroborative evidence "need not by itself establish that the crime was committed or show all the elements thereof, but it must relate to some act or fact which is an element of the offense." (*People* v. *Gallardo* (1953) 41 Cal.2d 57, 63 [257 P.2d 29].) "The corroboration is sufficient if considered by itself it tends, in some way, to connect the defendant with the offense charged." (*People* v. *Malone* (1947) 82 Cal.App.2d 54, 61 [185 P.2d 870].) **(1d)** "When as in the present record it is discovered that there is testimony aside from that of the accomplice which tends to connect the defendant with the commission of the crime, the function of the appellate court is performed. Questions of the weight of the evidence and the credibility of the witnesses are for the trial court, and since the circumstances reasonably justify the finding of guilt, an opposing view that they also may be reconciled with innocence will not warrant interference with the judgment on appeal. [Citation.]" (*People* v. *Henderson* (1949) 34 Cal.2d 340, 347 [209 P.2d 785].)

■ Under CALJIC No. 2.01, "[A] finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only (1) consistent with the theory that the defendant is guilty of the crime but (2) cannot be reconciled with any other rational conclusion." In addition, each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt, must be proved beyond a reasonable doubt. Finally, in order for the circumstantial evidence to be sufficient enough to support a conviction, the evidence can only be susceptible to one reasonable interpretation and that interpretation must point to the defendant's guilt.

■ By comparing the characteristics of corroborating evidence with the characteristics of circumstantial evidence sufficient to prove a defendant's guilt, it is evident that the two types of evidence are designed to satisfy separate and distinct factual situations. The fact that circumstantial evidence is used in cases requiring corroborative evidence does not mean that the prosecution "substantially relies" on the circumstantial evidence as that phrase is used in cases involving CALJIC No. 2.01. These cases refer to "substantially rely" as meaning that direct evidence was a small part of the prosecution's case (*People* v. *Zerillo* (1950) 36 Cal.2d 222, 233 [223 P.2d 223]) or the defendant's guilt is to be inferred from a pattern of incriminating circumstances. (*People* v. *Wiley, supra,* 18 Cal.3d at p. 174; *People* v. *Gould* (1960) 54 Cal.2d 621, 629 [7 Cal.Rptr. 273, 354 P.2d 865].)

However, in cases where an accomplice testifies, the prosecution is substantially relying on the accomplice's testimony and the corroborative evidence is only needed to substantiate the accomplice's testimony and over-

come the distrust with which the accomplice's testimony is viewed. (*People* v. *Marshall* (1969) 273 Cal.App.2d 423, 427 [78 Cal.Rptr. 16]; *People* v. *Warner* (1969) 270 Cal.App.2d 900, 912 [76 Cal.Rptr. 160].)

█ Therefore, because the circumstantial evidence presented in the instant case was corroborative evidence that did not require the jury to infer guilt from a pattern of incriminating circumstances (*People* v. *Gould, supra,* 54 Cal.2d at p. 629), the trial court did not err in failing to give CALJIC No. 2.01.

The judgment is affirmed.