[No. B086898. Second Dist., Div. Seven. Sept. 20, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSE ENRIQUE CRUZ, Defendant and Appellant.

## Counsel

Gary E. Gibbs, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Jaime L. Fuster and Allison Hughes Ting, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WOODS (Fred), J.**—Convicted by jury of assault with a firearm (Pen. Code, § 245, subd. (a)(2); count I; statutory references, unless otherwise noted, are to the Penal Code) and discharging a firearm at an occupied building (§ 246; count II) appellant contends: (1) the intent required by section 246 is "the intent to strike the building"; (2) imposition of the upper term on count II was an abuse of discretion; (3) by imposing concurrent terms the trial court violated section 654; (4) the trial court erred in refusing to give CALJIC No. 2.01 (Sufficiency of Circumstantial Evidence—Generally); and (5) giving a flight instruction (CALJIC No. 2.52) was error. We find appellant's contentions meritless and affirm the judgment.

### FACTUAL BACKGROUND

There being no insufficiency of evidence claim, the facts may be stated simply. Our perspective favors the judgment. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303-304 [228 Cal.Rptr. 228, 721 P.2d 110].)

About 5:45 p.m. on February 6, 1994, Sergeant Andrews, the supervising security officer at the Del Amo swap meet, was contacted by a vendor about possible trouble between two gangs. Sergeant Andrews, armed and in uniform, went toward the center of the swap meet building and saw a confrontation between two groups of young Hispanic men. There were about six in each group and they were exchanging epithets and gang signs. One group wore "Night Owls" gang insignia, the other "South Los."

Two other uniformed security guards, Francis Alvarado and Ami Shochi, joined Sergeant Andrews.

Officer Alvarado told the groups to remove their gang insignia and leave the swap meet. The South Los group was cooperative and left.

The Night Owls group, which included appellant, was uncooperative. They refused to remove their gang insignia and appellant said to Officer Alvarado, "Well, why are you throwing us out when you yourself are Mexican?"

Officer Alvarado just smiled.

Appellant said, "That smile is going to be your last smile."

Other group members were also hostile and said Officer Alvarado "was going to hear from them again . . . ," that "we were making a mistake, that they were going to come back for us."

The officers escorted the Night Owls group outside and all six of them entered a 1990 or 1991, two-door black Chevrolet Monte Carlo. Appellant was the front passenger. The car left.

The three security guards returned to their regular positions. Officer Alvarado stood by a front entrance door, about six feet inside. The door was closed, but it and the surrounding area were clear glass. Officer Alvarado had an unobstructed outside view and he was in full view of anyone outside.

About 6:05 p.m., 10 to 15 minutes after the Night Owls group had left in the black Monte Carlo, a bullet shattered the glass door, missing Officer Alvarado's head by 4 inches.

Sergeant Andrews, standing by a nearby front door, heard the shot, stuck his head outside, and saw appellant, in the front passenger seat of the same black Monte Carlo, holding a handgun. He saw appellant fire three more shots in the direction of Officer Alvarado's doorway.

Officer Alvarado, after the first shot, saw appellant in the front passenger seat of the same black Monte Carlo, holding a gun with both hands. Officer Alvarado dropped to the floor and tried to move the "children and other people" who were standing near the door, away. He heard three more shots and the sound of breaking glass.

The black Monte Carlo, without license plates, sped off.

The security officers called the sheriff's department. Sometime later, deputy sheriffs arrived and photographed the scene. The photographs showed the cement, above the glass door, where one bullet struck, and the after effects of the three bullets which had gone through the glass door.

A month later, on March 5, Sergeant Andrews again saw appellant sitting in the same black Monte Carlo, parked in the swap meet parking area. He detained appellant and called the police, who arrested appellant.

### DISCUSSION

1. *The intent required for a violation of section 246.*

Section 246 provides: "Any person who shall maliciously and willfully discharge a firearm *at* an . . . occupied building . . . is guilty of a felony . . . ." (Italics added.)

▪ Appellant contends that the word "at," as used in the statute, means "with the intent to strike" the building. His position is most easily understood by considering these examples.

1. Sam Sharpshooter sees the mechanic who bungled the repair of his car standing inside the open bay of a commercial garage. Sam shoots at the mechanic and hits him.

2. Sam shoots at the mechanic, misses, but hits the wall of the garage.

3. Sam, trying only to frighten the mechanic, aims six inches above the garage roof, fires, and hits the garage.

According to appellant, in *none* of the three examples has Sam violated the statute. In example No. 1, although Sam intended to fire "into" an occupied building, he did not intend to strike *the building*, only the mechanic inside the building.

In examples Nos. 2 and 3, although Sam did strike the building, he did not intend to do so.

Not only is appellant mistaken about the meaning of the word "at," as used in the statute, but even if he was correct his conduct would have violated the statute. We explain.

Appellant relies upon *People* v. *Stepney* (1981) 120 Cal.App.3d 1016 [175 Cal.Rptr. 102], a case which does not support his position. Stepney had forcibly entered a residence looking for a man who owed him money. Not finding him, Stepney shot the man's television set. On appeal, the court reversed the section 246 conviction because ". . . the firing of a pistol *within* a dwelling house does not constitute a violation of Penal Code section 246."[1] (120 Cal.App.3d at p. 1021, italics added.)

*People* v. *Stepney* does not state that section 246 requires an intent to strike the building. To the contrary, it "emphasize[d] that [its] decision . . . is limited to the discharge of a firearm within a dwelling." (*People* v. *Stepney, supra,* 120 Cal.App.3d at p. 1021.)

Apposite is *People* v. *Chavira* (1970) 3 Cal.App.3d 988 [83 Cal.Rptr. 851] which rejected an argument identical to appellant's. The court stated: "The

[1]The Court of Appeal observed: "We find nothing within Penal Code section 246 that remotely suggests that the Legislature intended that the shooting of a television set, whether done by a trespasser or the owner of the set, should be a felony. We shudder to think of a scenario wherein a parent, having his fill of 'Mork and Mindy,' turns the television off, much to the distress of his children. He is then subjected to the invariable harangue, which abruptly terminates when he dispatches the television with a round from his 'tiny little pistol,' only to find himself doing two years in state prison upon complaint by his children. If the shooting of a television set is to become a felony punishable by imprisonment, let the Legislature, not the courts, so decree." (*People* v. *Stepney, supra,* 120 Cal.App.3d at p. 1021, fn. 5.)

evidence shows that the second series of shots were fired at a group of persons congregated in front of, and on the driveway leading to, Camacho's home. The persons shot at testified that they heard pellets and slugs hitting the house. The jury was instructed that, to convict under section 246, the shooting must have been with intent to hit the building. The contention is that the evidence did not meet the test of the instruction. We disagree. An act done with a reckless disregard of probable consequences is an act done with 'intent' to cause such result within the meaning of the words used in the instruction. Defendant and his associates engaged in a fusillade of shots directed primarily at persons standing close to a dwelling. The jury was entitled to conclude that they were aware of the probability that some shots would hit the building and that they were consciously indifferent to that result. That is a sufficient 'intent' to satisfy the statutory requirement." (*Id.* at p. 993, fns. omitted.)

Finally, we note that even if the statute required—which it does not—an intent to strike the building, the evidence demonstrates appellant had such an intent.

On appeal, appellant concedes "the evidence established that the shots were fired with the intent to assault a particular named individual inside the building [Officer Alvarado]." But it was undisputed that this "individual," Officer Alvarado, was not only inside the building but behind a glass door. The *only* way to shoot him from outside the building was to "strike the building" by firing a bullet through the glass door and then have the bullet strike Officer Alvarado. If the shooter intended to shoot Officer Alvarado, which appellant concedes, then—because he knew the bullets had "to strike" the glass door,[2] the shooter also intended to strike the building.

## 2. *Imposition of upper term.*

■   Appellant contends the trial court abused its discretion in imposing the upper term on count II, the section 246 conviction, because *some* of the trial court's reasons were improper. Appellant is mistaken.

A single factor in aggravation will support imposition of an upper term. (*People* v. *Castellano* (1983) 140 Cal.App.3d 608, 615 [189 Cal.Rptr. 692].) "When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence

---

[2]To know that one's act will cause a result is to *intend* that result. One may not *desire* that result, that result may not be the *motive* for the act, not the *purpose* of one's act—but one *intends* the result.

had it known that some of its reasons were improper." (*People* v. *Price* (1991) 1 Cal.4th 324, 492 [3 Cal.Rptr.2d 106, 821 P.2d 610].)

Among the circumstances in aggravation the trial court properly relied upon were: the crime involved premeditation and planning (Cal. Rules of Court, rule 421(a)(8)), multiple offenses were involved[3] (*id.*, rule 421(a)(7)), there were multiple victims,[4] and appellant induced others to participate in the offense. (*Id.*, rule 421(a)(4).)

It is clear from the record, the trial court relied upon these circumstances to impose the upper term. There was no abuse of discretion.

3. *Concurrent terms and section 654.*

"Section 654 when applicable precludes punishment 'under' more than one criminal provision. It has long been established that the imposition of concurrent sentences is precluded by section 654 . . . because the defendant is deemed to be subjected to the term of *both* sentences although they are served simultaneously." (*People* v. *Miller* (1977) 18 Cal.3d 873, 887 [135 Cal.Rptr. 654, 558 P.2d 552], citations omitted, italics in original.)

■ Appellant contends the concurrent sentences for assault with a firearm (count I) and discharging a firearm at an occupied building (count II) violated section 654. Appellant is mistaken.

"Section 654 does not preclude separate punishment for crimes of violence committed against separate victims." (*People* v. *Price, supra*, 1 Cal.4th 324, 492.)

Security guard Alvarado, although uninjured, was a victim of both crimes. He was not, however, the only victim of the second crime. The "children and other people" standing near Officer Alvarado, whom he tried "to move . . . away" as the bullets shattered the glass front door, were at risk from bullets and flying glass. They too were "victims." Appellant was properly punished for his crime against them. (See *People* v. *Higareda* (1994) 24 Cal.App.4th 1399, 1413 [29 Cal.Rptr.2d 763]; *People* v. *Masters* (1987) 195 Cal.App.3d 1124, 1128 [241 Cal.Rptr. 511]; *People* v. *Anderson* (1990) 221

---

[3]The "children and other people" near Officer Alvarado were "victims" of count II, allowing separate punishment from count I.

[4]Although, as the Advisory Committee Comment observed, this circumstance was deleted from rule 421 because trial courts frequently misapplied it, when present, as here, it is properly considered by the trial court.

Cal.App.3d 331, 338-339 [270 Cal.Rptr. 516]; *People* v. *Gutierrez* (1992) 10 Cal.App.4th 1729, 1736-1737 [13 Cal.Rptr.2d 464]; *People* v. *Phan* (1993) 14 Cal.App.4th 1453, 1466 [18 Cal.Rptr.2d 364].)

4. *CALJIC No. 2.01 (Sufficiency of Circumstantial Evidence—Generally).*

■   Appellant contends the trial court erred in refusing to give CALJIC No. 2.01.[5] He is mistaken.

This was a direct evidence, not circumstantial evidence, case. Officers Alvarado and Andrews both testified they saw the person who shot at Officer Alvarado and both identified appellant as that person. It was this direct evidence that the People relied on to prove appellant's guilt. In such circumstances CALJIC No. 2.01 need not and should not be given. (*People* v. *Marquez* (1992) 1 Cal.4th 553, 577 [3 Cal.Rptr.2d 710, 822 P.2d 418]; *People* v. *Williams* (1984) 162 Cal.App.3d 869 [208 Cal.Rptr. 790].)

5. *Flight instruction.*

■   Appellant contends it was error to give a flight instruction[6] because identity was in issue. He is mistaken. (*People* v. *Mason* (1991) 52 Cal.3d 909, 943, fn. 13 [277 Cal.Rptr. 166, 802 P.2d 950]; *People* v. *Simon* (1989) 208 Cal.App.3d 841, 851 [256 Cal.Rptr. 373].)

---

[5]The instruction reads: "However, a finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only (1) consistent with the theory that the defendant is guilty of the crime, but (2) cannot be reconciled with any other rational conclusion.

"Further, each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance upon which such inference necessarily rests must be proved beyond a reasonable doubt.

"Also, if the circumstantial evidence [as to any particular count] is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to [his] [her] innocence, you must adopt that interpretation which points to the defendant's innocence, and reject that interpretation which points to [his] [her] guilt.

"If, on the other hand, one interpretation of such evidence appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable."

[6]The court gave CALJIC No. 2.52: "The flight of a person immediately after the commission of a crime, or after he is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine."

## DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Johnson, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 4, 1996. Kennard, J., was of the opinion that the petition should be granted.