[EDITORS' NOTE: THIS OPINION IS DEPUBLISHED UPON GRANTING OF PETITION FOR REVIEW. THE OPINION APPEARS BELOW WITH A GRAY BACKGROUND.]
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1218 
OPINION
Charles David English's live-in girlfriend lost consciousness after he slapped and punched her face, threw her against the wall and pushed her to the floor, and choked and kicked her. At a bifurcated trial, he admitted three prison term prior allegations (Pen. Code, § 667.5, subd. (b)), [1]
after which a jury found him guilty of assault by means of force likely to produce great bodily injury and found an infliction of great bodily injury allegation true (§§ 245, subd. (a)(1), 12022.7, subd. (a)). The court imposed an aggregate 10-year sentence (a four-year aggravated term on the assault, a consecutive three-year term on the great bodily injury enhancement, and three consecutive one-year terms on the prison term prior enhancements).
 ISSUES ON APPEAL First, English argues that the denial of his motion for a continuance on the day before trial was an abuse of discretion and a violation of his rights to counsel and due process. Second, he argues that imposition of the aggravated term without jury findings on circumstances in aggravation was a violation of his rights to due process and jury trial. We will affirm the judgment.
 FACTUAL SUMMARY A police officer responding to a call about "a woman who had fallen and hit her head" saw "extreme swelling of the whole left side" of English's girlfriend's face, noted she was bleeding from her mouth, and observed "she was scared to talk" to him. She was not fully oriented. Three lines on her chin looked like injuries caused by "knuckles from a closed fist."
 English told the officer his girlfriend had tripped and fallen and hit her head while walking outside. She told the officer English had struck her in the *Page 1219 
face. The knuckles of English's right hand were red. The officer saw no blood or any other evidence of a fall where English said she had fallen.
 A paramedic treating English's girlfriend at the scene observed "substantial injuries to her head and face." The trauma to her head was so pronounced that he stabilized her neck with a cervical collar. On the basis of several thousand falls to which he had responded in his career, he described her injuries as "much more pronounced" than those from a typical ground level fall.
 The officer photographed English's girlfriend's injuries in the trauma center of the hospital later that day. She was not responsive. He saw severe bruising and swelling, a small amount of blood coming from her nose, an eye bloodshot from blunt force to her head, and several bruises on her legs as high as the middle thigh and as low as the ankle.
 DISCUSSION 1. Motion for Continuance
 English argues that the denial of his motion for a continuance on the day before trial was an abuse of discretion and a violation of his rights to counsel and due process. The Attorney General argues the contrary.
 After making a motion for a continuance, English's attorney represented to the court that not until the day before trial was he able to give her "any direction as to how to locate" potential witnesses to testify on his behalf. Noting his denial of any participation in the assault, she asked for a continuance so an investigator could "track down" those witnesses. Finding no showing either of reasonable diligence to procure the attendance of those witnesses or of materiality of the proposed testimony of those witnesses, the court noted 100 jury summons had gone out to people who had made "arrangements to be off work and away from their families for the rest of the week" and denied the motion.
 No mechanical tests exist for deciding when a denial of a motion for a continuance is so arbitrary as to violate due process, so the answer lies "in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." (Ungarv. Sarafite (1964) 376 U.S. 575, 589
[11 L.Ed.2d 921, 84 S.Ct. 841].) Since "broad discretion must be granted trial courts on matters of continuances," nothing short of "an unreasoning and arbitrary `insistence upon expeditiousness in the face of a justifiable request for delay'" violates the right to counsel. (Morris v. Slappy (1983) 461 U.S. 1, 11-12
[75 L.Ed.2d 610, 103 S.Ct. 1610].) Only a showing *Page 1220 
of an abuse of discretion and prejudice to the defense suffices to reverse a judgment on the basis of a denial of a motion for a continuance. (People v. Samayoa (1997) 15 Cal.4th 795,840 [64 Cal.Rptr.2d 400, 938 P.2d 2]; People v.Grant (1988) 45 Cal.3d 829, 843 [248 Cal.Rptr. 444,755 P.2d 894].) English fails to make the requisite showing. The evidence of his guilt was as overwhelming as his reasons for a continuance were conclusory.
 2. Aggravated Term
 English argues that imposition of the aggravated term without jury findings on circumstances in aggravation was a violation of his rights to due process and jury trial. The Attorney General argues the contrary.
 The probation officer's report noted no circumstances in mitigation (Cal. Rules of Court, former rule 4.423)[2] but elaborated five circumstances in aggravation (Cal. Rules of Court, former rule 4.421 (former rule 4.421)):
 "(a) Facts relating to the crime, whether or not charged or chargeable as enhancements, including the fact that: [¶] . . . [¶] [(See former rule 4.421(a).)]
 "1. The defendant kicked the victim on her face while she was on the ground, which demonstrates a high degree of cruelty, viciousness and callousness. [(See former rule 4.421(a)(1).)]
 "3. The victim was highly intoxicated, with a BAC of .34%, and this along with the defendant's superior strength and history as an ex-boxer made her particularly vulnerable. [(See former rule 4.421(a)(3).)]
 "(b) Facts relating to the defendant, including the fact that: [(See former rule 4.421(b).)]
 "1. The defendant has engaged in violent conduct, which indicates a serious danger to society. [(See former rule 4.421(b)(1).)]
 "2. The defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous or of increasing seriousness. [(See former rule 4.421(b)(2).)]
 "5. The defendant's prior performance on probation or parole was unsatisfactory. [(See former rule 4.421(b)(5).)]" *Page 1221 
 The probation officer's report documented English's long criminal career. Least serious were his two infractions for disturbing the peace. (§ 415.) Among his eight Vehicle Code misdemeanors were three DUI's and one reckless driving. (Veh. Code, §§ 23103, 23103.5, 23152, subd. (a).) His priors included six other misdemeanors — two for criminal threats (§ 422), two for battery (§ 242), and two for domestic violence (§ 273.5, subd. (a)) — and seven felonies — two for second degree burglary (§§ 459, 460, subd. (b)) and one each for possession of stolen property (§ 496), vehicle theft (Veh. Code, § 10851, subd. (a)), grand theft (§ 487, subd. (a)), attempted burglary (§§ 459, 664), and assault with a deadly weapon (§ 245, subd. (a)(1)).
 At the probation and sentencing hearing, the court made no reference to the circumstance in aggravation about English's "high degree of cruelty, viciousness, [and] callousness" (former rule 4.421(a)(1)) but found the other four true. The court carefully noted that each and every prior supporting the circumstance in aggravation for "numerous" priors (former rule 4.421(b)(2)) was different from each of the three priors for which the court was about to impose a consecutive one-year term each for grand theft (§ 487, subd. (a)), second degree burglary (§§ 459, 460, subd. (b)), and assault with a deadly weapon (§ 245, subd. (a)): "The cases in which he was previously committed to prison aside, his prior convictions are still extremely numerous including four significant misdemeanor Vehicle Code violations and convictions for burglary, attempted burglary, receiving stolen property, spousal abuse, disturbing the peace, battery, criminal threats, battery, disturbing the peace, criminal threats, spousal abuse."
 No jury findings on the circumstance in aggravation for "numerous" priors (former rule 4.421(b)(2)) were required. "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt" (Apprendi v. NewJersey (2000) 530 U.S. 466, 490 [147 L.Ed.2d 435,120 S.Ct. 2348] (Apprendi), italics added) because the "`statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basisof the facts reflected in the jury verdict or admitted bythe defendant" (Blakely v. Washington (2004)542 U.S. 296, 303 [159 L.Ed.2d 403, 124 S.Ct. 2531], original italics). Apprendi's "fact of a prior conviction" exception arose in Almendarez-Torres v. United States
(1998) 523 U.S. 224 [140 L.Ed.2d 350, 118 S.Ct. 1219], which held that proof beyond a reasonable doubt is not necessary for a prior conviction. (Id. at pp. 239-247.)
 After English's probation and sentencing hearing, the United States Supreme Court held that California's determinate sentencing law violates the federal constitutional right to a jury trial by permitting imposition of an *Page 1222 
aggravated term on the basis of facts that a court finds true by a preponderance of the evidence instead of on the basis of facts that a jury finds true beyond a reasonable doubt. (Cunningham v. California (2007) 549 U.S.___, ___ [166 L.Ed.2d 856, 864, 127 S.Ct. 856] (Cunningham), overruling People v. Black (2005) 35 Cal.4th 1238 [29 Cal.Rptr.3d 740, 113 P.3d 534], vacated sub nom. Blackv. California (2007) ___ U.S. ___ [167 L.Ed.2d 36,127 S.Ct. 1210].) Cunningham reaffirmedApprendi's "fact of a prior conviction" exception and noted: "A fact underlying an enhancement cannot do double duty" and "cannot be used to impose an upper term sentence and, on top of that, an enhanced term." (Cunningham, at p. ___ [166 L.Ed.2d at pp. 868-869, 127 S.Ct. at pp. 863-864], citing former § 1170, subd. (b)[3] ["The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law."].) Here, the court rigorously complied with the law by using one set of priors for the circumstance in aggravation for numerous priors (former rule 4.421(b)(1)) and an entirely different set of priors for the three prison term prior enhancements (§ 667.5, subd. (b)).
 One valid circumstance in aggravation is sufficient to support imposition of an aggravated term. (People v. Cruz (1995) 38 Cal.App.4th 427, 433-34
[45 Cal.Rptr.2d 148].) English's plethora of priors abundantly supports the circumstance in aggravation for numerous priors.
 "It's safe to say" English "never met Will Rogers." (J. McMurtry (Sugar Hill Records 1997) "For All I Know.") The latest ugly chapter in the ongoing saga of his long criminal career shows that his live-in girlfriend lost consciousness after he inflicted "substantial injuries to her head and face" by slapping and punching her, throwing her against the wall and pushing her to the floor, and choking and kicking her. On those shocking facts, with not even a single circumstance in mitigation, there is no reasonable possibility that the court would have considered the middle term or the mitigated term appropriate for a person with his priors, with or without any other circumstance in aggravation. (See Peoplev. Gonzalez (2006) 38 Cal.4th 932, 961, fn. 6 [44 Cal.Rptr.3d 237, 135 P.3d 649] [noting "substantial equivalency" of reasonable possibility and reasonable doubt formulations of harmless error], citing Fahy v. Connecticut (1963)375 U.S. 85, 86-87 [11 L.Ed.2d 171, 84 S.Ct. 229].) SinceCunningham error, if any, is harmless beyond a reasonable doubt, we need not address the other three circumstances in aggravation. (See People v. Sayres
(2007) 150 Cal.App.4th 1040, 1044-1046.) *Page 1223 
 DISPOSITION The judgment is affirmed.
 Vartabedian, Acting P. J., and Levy, J., concurred.
[1] All statutory references are to the Penal Code.
[2] Applicable at the time of English's sentencing were the rules of court in effect until January 1, 2007.
[3] Applicable at the time of English's sentencing was the version of the statute in effect until thepost-Cunningham amendment that, inter alia, substituted "choice of the appropriate term shall rest within the sound discretion of the court" for "court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime." (Stats. 2004, ch. 747, § 1; cf. Stats. 2007, ch. 3, § 3, eff. Mar. 30, 2007.) *Page 1224