Filed 10/18/13  P. v. Franklin CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056205 |
| v. | (Super.Ct.No. FVI1101407) |
| KAIEESHA FRANKLIN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Jules E. Fleuret, Judge.  Affirmed.

Rex Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

1

## INTRODUCTION

Sixteen year-old Kaieesha Franklin (defendant) argues that the trial court abused its discretion in imposing the upper term following her conviction for attempted murder (Pen. Code, §§ 664/187, subd. (a)).[1] We will affirm.

## FACTS AND PROCEDURAL HISTORY

On June 9, 2011, in the course of a street brawl between two neighbors that followed a dispute over a children's ball game, defendant stabbed a 13-year-old girl (the victim) in the abdomen, chest, and arm.

The fight began when a child from one family fell—or was pushed—into a rose bush and his mother, Tempest S. (Tempest), began fighting with the mother of the children with whom he had been playing, Monique K. (Monique). As the fight between the women escalated, family members from both sides joined in and began calling friends and relatives to come and help. Eventually, over 20 people arrived; many became involved in the brawl.

Defendant, the great-niece of Tempest's husband Donald (Donald), was driven to the fight by her mother, Elaine E. Defendant and one of Monique's daughters, thirteen-year-old G. K. (the victim), began punching each other. At some point defendant went into Donald's house for five or ten minutes, then returned with her right hand held behind her back and approached the victim saying, "I want you, bitch. I want you." When defendant and the victim resumed fighting, defendant stabbed the victim multiple times

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

in the chest, abdomen, and arm. The victim was airlifted from the scene to Loma Linda University Hospital, where she remained for more than a week.

On September 6, 2011, defendant was charged by information as an adult (Welf. & Inst. Code, § 707, subd. (d)(2)(A)), with attempted murder (§§ 664/187, count 1) and assault with a deadly weapon (§ 245, subd. (a)(1), count 2). As to count 1, the information alleged that the attempted murder was willful, deliberate, and premeditated (§ 664, subd. (a)); that defendant had personally used a deadly and dangerous weapon in the commission of the crime (§ 12022, subd. (b)(1)); and that she had personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)). On September 13, 2011, the court granted the People's motion to dismiss count 2.

On September 21, 2011, a jury found defendant guilty of attempted murder but not that the crime was willful, deliberate, or premeditated. The jury also found true the allegations that defendant had personally used a deadly weapon in the commission of the attempted murder and had inflicted great bodily injury on the victim. The court referred the matter to probation for a report.

The probation report filed on October 19, 2011, identified four factors in aggravation and two in mitigation. (Cal. Rules of Court, rules 4.421, 4.423) In aggravation: the crime disclosed a high degree of cruelty, viciousness, and callousness; defendant was armed with a weapon at the time of the offense; the victim was particularly vulnerable; the manner in which the crime was carried out indicated planning and sophistication; and defendant had engaged in violent conduct which indicated she was a danger to society. In mitigation: defendant had no prior record. The report noted

3

as "the most despicable aspect surrounding the current offense" that not one adult had intervened to stop the incident from escalating to the point where a 13-year-old child was almost murdered. The report recommended that defendant receive the mid-term sentence of seven years for the primary conviction of attempted murder, plus three additional years for the infliction of great bodily injury and one year for the use of a deadly weapon.

At the beginning of the sentencing hearing on April 27, 2012, the court informed the parties that it had read and considered the probation officer's report and recommendations as of the date it was filed. The court then heard victim impact statements from the victim and her parents. The victim's father, H. K., told the court that, following the incident, he had lost his job and the family had had to move. H. and Monique both described their daughter's severe physical and emotional scars and her inability to sleep because of fear that someone would break in to "finish the job." The victim described the feeling of "my blood leaving my body as I collapsed to the ground." Apparently because she was unable to continue speaking, the district attorney then read the rest of the statement in which the victim described the pain of her injuries and treatment in the hospital, her fear of death, and the "ugly scars" she would have to live with for the rest of her life. She said defendant had had "no compassion" and had never apologized.

Defense counsel argued that two of the aggravating circumstances identified by the probation report were incorrect. The 13-year-old victim was not, counsel said, particularly vulnerable. Also, in counsel's opinion, the crime did not demonstrate sophistication and planning: "This is exactly the opposite of that." Counsel asked the

4

court to impose the low term and, in the interests of justice, to waive the enhancement terms. The prosecutor stressed the vulnerability of the victim, who was in her own home while defendant came to the neighborhood from elsewhere, and defendant's planning as demonstrated by her going into the house and retrieving the knife. Citing the probation report, the prosecutor emphasized the vicious nature of the act and asked the court to impose the upper term.

After discussing adult involvement in and responsibility for the crime, the court agreed that the 13-year-old victim was vulnerable: "[s]he was involved in a scuffle that involved pushing and fists," but "she was in her own front yard" and "there was nothing to indicate that anyone was going to bring a knife to the fistfight." The court also agreed that the fact that defendant left the fistfight to get a knife showed planning. In the court's view, the fact that defendant had no prior record and had expressed "some sympathy" for the victim did not outweigh the factors in aggravation. "Considering the impact that this conduct which was found to be true by the jury has had on the victim in this case and the other factors in aggravation and mitigation, it appears appropriate to the court that she should be sentenced to the aggravated term, which is nine years." The court added that "The effect that the conduct had on the victim and the family in this case is tremendous; and that is an appropriate message to be sent. Not just to other people situated similarly to Miss Franklin but to people like her parents who act like children, who let their pride, their belief that violence is a solution to conflict infect their children. So it's just unfortunate that some of the parents and adults involved can't share some of this time with Miss Franklin."

5

The court sentenced defendant to a total of 13 years in state prison: the upper term of 9 years for the attempted murder offense, plus three consecutive years for the use of a deadly weapon and 1 year for the infliction of great bodily injury.[2]

### DISCUSSION

Defendant's sole argument on appeal is that the trial court abused its discretion in selecting the upper term for the primary offense. The People respond that the sentence does not represent an abuse of discretion and that in any case, defendant has forfeited her argument by failing to raise it below. We deal first with the People's second point.

*Forfeiture*

The People are correct that generally, in the interests of judicial economy, sentencing errors must be raised below to preserve them as issues appropriate for consideration on appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 351, 354.) To be proper, an objection must be specific enough to give the trial court "a meaningful opportunity to correct any sentencing errors." (*People v. de Soto* (1997) 54 Cal.App.4th 1, 9.)

Here, defense counsel argued specifically that two of the four aggravating factors identified in the probation report were incorrect and inappropriate. He also pressed the court to consider his client's lack of a criminal record and good behavior in juvenile hall as additional factors in mitigation. He summarized his arguments by asking that she be

---

[2] Pursuant to the provision of Welfare and Institutions Code section 1731.5, subdivision (c), the court ordered defendant to be housed at the Department of Juvenile Justice. Because defendant's period of incarceration will extend beyond her 21st birthday, she may be transferred to state prison after her 18th birthday. (Welf. & Inst. Code, § 1731.5, subd. (c)(3).)

6

sentenced to the lower term rather than the middle term recommended in the report. Although not couched in the language of a formal objection, counsel's clear and specific arguments for the lower term rather than the middle term must reasonably be construed as also constituting an objection to the upper term. Certainly they gave the trial court a meaningful opportunity to modify its intended sentence, had it wished to do so. Forfeiture is thus not appropriate.

*The Upper Term*

Standard of Review

We review the trial court's selection of a sentence term for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847 (*Sandoval*).)

Applicable Law

In sentencing a convicted offender, a trial court may select any one of the three available statutory prison terms which in its discretion best serves the interests of justice. (§ 1170, subd. (b).) Although the court is required to state the reasons for its choice on the record (§ 1170, subd. (c)), and is to be guided by considerations of aggravating and mitigating circumstances (§ 1170 subd. (b)), it is not required to weigh such factors, or to cite specific facts in support of its sentencing choice. (*Sandoval*, *supra*, 41 Cal.4th at pp. 846-847.) And while, "[A] court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law," (§ 1170, subd. (b)), its "discretion to identify aggravating circumstances is otherwise limited only by the requirement that they be 'reasonably related to the decision being made.'" (*Sandoval*, *supra*, at p. 848, quoting Cal. Rules of Court, rule 4.408(a).) In addition to the

7

record and the probation report, the court may consider "statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing." (§ 1170, subd. (b).) Finally, "'California courts have long held that a single factor in aggravation is sufficient to justify a sentencing choice, including the selection of an upper term[.]' [Citation.]" (*People v. Quintanilla* (2009) 170 Cal.App.4th 406, 413; see also *People v. Cruz* (1995) 38 Cal.App.4th 427, 433-434.)

Analysis

Here, the trial court properly agreed with and relied upon a number of the factors in aggravation identified in the probation report, as well as the statements made by the victim and her parents at the sentencing hearing. First, as the probation report said, the crime disclosed "a high degree of cruelty, viciousness and callousness." Even defense counsel did not dispute this. The victim was repeatedly stabbed in her chest and abdomen, as well as in her arm. Second, the court's agreement that the victim was particularly vulnerable was well supported by the record: she was 13 years old, unarmed, and in her own yard when the unexpectedly deadly attack occurred. Third, that defendant planned her attack was, as the court noted, shown by the sequence of her acts: she paused in the middle of a fistfight to go inside her uncle's house for several minutes, retrieve a knife, and return with the weapon hidden behind her back as she approached the victim. Finally, the detailed statements of the victim and her parents describing her hospital ordeal and ongoing physical and emotional scars were "'reasonably related to the decision being made.' [Citation.]" (*Sandoval*, *supra*, 41 Cal.4th at p. 848.)

8

Alleged Use of an Improper Factor

Defendant argues that the court's statement about adult responsibility for the initial brawl shows that it imposed the upper term not to punish defendant but in retribution against the adults. We disagree. The court's statement that the course of events that led to the crime were set in motion when adults who should have behaved like adults instead behaved like children, was in no way connected to the sentence it imposed on defendant for her own crime. In our opinion, the court was merely expressing a wish that it could also sentence the adults—for their own misdeeds—and was not an indication that it was using their misconduct as a factor in selecting defendant's sentence.

Moreover, even if it was somehow misusing its disapproval of the adults, the court had many other aggravating factors supporting its decision, and there is thus no basis for this court to disturb the sentence. "When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper." (*People* v. *Price* (1991) 1 Cal.4th 324, 492, superseded by statute on a different ground as stated in *People v. Hinks* (1997) 58 Cal.App.4th 1157, 1161.) The trial court stated on the record how and why it selected the upper term for the viciously attempted murder of a vulnerable young victim. There is no reasonable probability that it would have selected a lesser term for defendant absent its disapproval of adult behavior.

The trial court did not abuse its discretion.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON_____

J.

We concur:

McKINSTER_____
       Acting P. J.

RICHLI_____
       J.