Filed 12/14/20  P. v. Gruell CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>PATRICK KELLY GRUELL,<br><br>    Defendant and Appellant. | A160082<br><br>(Del Norte County<br>Super. Ct. No. CRF199365) |

Defendant Patrick Kelly Gruell pleaded guilty to inflicting corporal injury upon a cohabitant (Pen. Code,[1] § 273.5, subd. (a)) and was placed on probation.  Following revocation of probation, defendant was sentenced to the upper term of four years in state prison.  Challenging the imposition of an aggravated term, defendant contends the circumstances in aggravation relied on by the trial court are not supported by substantial evidence and, in the alternative, the court failed to exercise its discretion at all.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

*The Underlying Conviction*

We draw the facts regarding the conviction from the probation office's report.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

1

Around 2:10 a.m. on July 15, 2019, Del Norte County Sheriff Deputy Sanders responded to a call of reported domestic violence. Officers already at the scene reported "that a juvenile named [P.G.] ran to a nearby hotel seeking help. [P.G.] had stated that he had seen his father, Patrick Kelly Gruell, attacking his mother, April M[.], after she had accidentally spilled his drink. [P.G.] stated that during the fight [defendant] had punched April and then wrestled her to the ground, and then began choking April. He also stated that he believed April to be deceased because she had stopped moving after being strangled."

Deputy Sanders detained defendant, and then spoke with April M. Sanders "noticed her right cheek was red and swollen, the left side of her face was covered in sand, and the front of her neck had an approximately four (4) inch red abrasion across the center of her throat. April stated that [defendant] gets angry when he drinks alcohol and he had been drinking whiskey, and he was visibly intoxicated when she accidently [sic] spilled his drink, upsetting him. [Defendant] began to wrestle with her and in the process he struck her right cheek with his left elbow and hit her other places as well . . . . April then stated that [defendant] began to strangle her from behind, although she did not report a loss of consciousness or light headedness which she credited to knowing how to resist that type of choke."

Defendant's son P.G. told Sanders that after defendant hit and wrestled April to the ground, he "strangled her from the front with two hands across her neck while she was lying on her back" and April stopped moving or struggling. He feared that defendant had killed her, so he ran to the Ocean View Inn to report the assault.

Defendant gave a statement admitting he hit and choked April " '[u]nintentionally.' "

Defendant was charged with corporal injury resulting in a traumatic condition against a cohabitant (§ 273.5; count 1) and assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4); count 2).

*Guilty Plea and Placement on Probation*

In July 2019 defendant pleaded guilty to count 1, with an agreement to "an up-front grant of probation." In August, the trial court suspended imposition of sentence and placed defendant on probation with terms and conditions that included regular drug and alcohol testing, reporting to the probation office, and enrollment in a statutorily mandated 52-week batterers' intervention program.

*Revocation of Probation and Sentence*

By early October 2019, the probation department had filed two petitions to revoke defendant's probation, both of which were resolved on October 9 with defendant's admission that he failed drug and alcohol tests, failed to appear in court, and failed to comply with other probation conditions. The trial court reinstated defendant's probation.

In March 2020, defendant admitted an allegation in a subsequent probation revocation petition that he had tested positive for alcohol and marijuana. After a contested hearing on the remaining allegations, which the court found true,[2] the trial court revoked defendant's probation. The court sentenced defendant to four years in state prison.

---

[2] The other allegations were that defendant had failed to check in with the probation office, failed to comply with the wait list requirements for the batterers' program, and had not returned to the probation department for weekly drug and alcohol testing.

3

**DISCUSSION**

Defendant contends the trial court acted capriciously in imposing the upper term of four years and in basing that decision on circumstances in aggravation that are not supported by substantial evidence. He also argues that comments the trial court made suggest it did not exercise its discretion at all. We find no merit in these arguments, as the full record of the sentencing decision makes clear. We first describe that in more detail.

A.    *Additional Background*

1.    <u>August 2019 Sentencing Hearing</u>

At the initial sentencing hearing on August 29, 2019 (when defendant was placed on probation), the probation office filed a written Presentence Investigation Report (probation report) and recommended rejecting the plea agreement. The probation office believed defendant was not suitable for probation and that this was "clearly an aggravated case." The probation report included a summary of the probation officer's interview with defendant on August 14 and his account of the offense, which it described as "contradictory to say the least."[3] The prosecution stood by the plea offer.

Although the trial court agreed with probation that the offense was very serious, it granted probation. "[I]n reading through the report, her son was afraid he may have killed her. It wasn't just foreplay out of hand. It was a serious assault. [¶] . . . [I]t would be my intent to give a stated recommendation of the aggravated term. . . . And so I would intend having a term of four years hanging over your head if you were to violate."

---

[3] Defendant told the probation officer that he and the victim had been drinking, "they got 'horny' and their 'foreplay' got out of hand." When he was asked about his statements to law enforcement on the night of the offense, he said he "remembered stating that he 'unintentionally' both struck and choked/strangled his girlfriend."

The court suspended imposition of sentence rather than imposing and suspending the aggravated sentence and placed defendant on three years formal probation. The court reiterated to defendant, "if you don't successfully complete probation, you got a substantial prison sentence."

2.      Proceedings After Revocation of Probation

After defendant's probation was revoked, the probation office filed a supplemental presentence investigation report on April 2, 2020 (supplemental report), which detailed defendant's lack of compliance with his probation terms and recounted the facts of the underlying conviction. The probation office argued defendant was not appropriate for probation and recommended an aggravated term of four years. The probation office relied on the circumstances in aggravation in California Rules of Court, rule 4.421(a),[4] that "the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness" and rule 4.421(b)(1) that "defendant has engaged in violent conduct that indicates a serious danger to society."

On April 9, 2020, the scheduled date of sentencing, specially appearing defense counsel indicated that defense counsel had recently prepared a written statement in mitigation (mitigation statement), which the court and prosecutor had not yet had an opportunity to review. The court and parties agreed to reschedule sentencing for April 16. The court discussed with counsel whether it had the authority to sentence defendant to something other than the four-year sentence it had indicated in August 2019. After counsel agreed the court did have such authority, the court mused that it might impose the middle term of three years. The court further stated it

_____

[4] All references to rules are to the California Rules of Court.

5

would "keep an open mind" about defense counsel's arguments for a mitigated sentence.

Defense counsel's mitigation statement contended that rule 4.420, which states in part that "a fact that is an element of the crime on which punishment is being imposed may not be used to impose a particular term," precluded using defendant's violence as an aggravating factor to support the upper term. (Rule 4.420(d).) It also argued defendant acknowledged wrongdoing at an early stage, which was a factor in mitigation. It disputed the probation office's statement that defendant's prior performance on probation in Trinity County was unsatisfactory and contended since it had been revoked but was reinstated, it appeared it had been successfully completed.[5]

At the continued sentencing hearing on April 16, the trial court indicated it had reviewed defense counsel's mitigation statement, the probation report, and the supplemental report.

The district attorney argued defendant's offense "was actually more violent than the average domestic violence. . . . [T]he strangulation was one of the things that was pretty telling. The son thought that she was dead because she stopped moving after being strangled. That's really dangerous behavior." He argued the offense was aggravated because (1) there was "more than one different type of assault[] on her, punching and strangling," (2) it was committed in the presence of a "special-needs child,"[6] and (3) "it

---

[5] The probation report noted defendant had two arrests for probation violations in Trinity County, where he had been placed on probation for violating Vehicle Code section 14601, and that he was terminated from that probation at the end of 2004.

[6] As will be seen, April M. reported that P.G. was mentally disabled.

6

was a particularly violent act, particularly scary as well, not just for the victim but for the child as well."

Defense counsel urged the low term. He argued that because section 473.5 already includes the element of corporal injury as a result of violent conduct, bodily harm and violent conduct cannot be an aggravating factor to support the imposition of the upper term. Thus, counsel argued, the particular circumstances in aggravation urged by the probation office (that "[t]he crime involved great violence . . . or other acts disclosing a high degree of cruelty, viciousness, or callousness" and that "defendant has engaged in violent conduct that indicates a serious danger to society") were not applicable. (Rule 4.421(a)(1), (b)(1).)

The probation officer argued defendant's acts were "particularly vicious or callous," not merely violent or egregious. He explained his view that "striking and choking . . . in front of a minor[] showed a high degree of callousness, at the very least," and that is not an element of section 273.5. He noted that strangulation risks serious or permanent debilitating injury. As to the claimed mitigation of early acknowledgment of wrongdoing, the probation officer responded that defendant said "they were choking each other as a joint thing," and he was "not willing to take responsibility for the actions that he made."

Defendant spoke briefly, stating his son no longer lived with him and this was the "one and only incident" and requesting drug court. April M., who also spoke, stated they had both been drinking, defendant had an alcohol problem, she would like defendant to have treatment, and although P.G. was 17 years old, he was "mentally disabled" and "his mindset [is] only, like [an] eight-year-old child."

Before imposing the sentence, the trial judge observed, "I think I made the determination of a sentence at the time and that I should stick with that." The court stated it was not convinced by defense counsel's arguments "because [section] 273.5 simply requires a traumatic condition . . . —it doesn't really even have to be a significant condition; it just needs to be a traumatic condition, a bloody lip maybe where there has been some hitting, or hitting someone with a weapon." The court described what happened here as "choking someone out to the point that they are unconscious is—there's such a great risk of serious bodily harm in that act, as probation pointed out."

The court also stated that "[p]rior performance [on probation] has been very poor." Defense counsel interjected to clarify that the court was not referring to defendant's current probation. The court responded that it was referring to defendant's "[p]rior probation," before this case. Defense counsel stated, "Okay. I just wanted to make sure that was clear." After this colloquy, the court noted, "But on this case as well. Three different violations. Why are we getting to the point that we are?" and then proceeded to impose sentence.

B.     *Applicable Law and Standard of Review*

When the trial court imposes a determinate sentence under section 1170, it is left to the "sound discretion" of the court to select the term—lower, middle, upper—that "best serves the interests of justice." (§ 1170, subd. (b).)

In making its determination as to the appropriate term, the trial court is permitted to consider the probation officer's report, statements in aggravation or mitigation submitted by the defendant, the prosecutor, and the victim, and any evidence presented at the sentencing hearing. (*People v. Sandoval (*2007) 41 Cal.4th 825, 848 (*Sandoval*); § 1170, subd. (b).)

8

The trial court is "free to base an upper term sentence upon any aggravating circumstance that the court deems significant, subject to specific prohibitions." (*Sandoval*, *supra*, 41 Cal.4th at p. 848.) Among the prohibitions is rule 4.420(d), which states that "a fact that is an element of the crime on which punishment is being imposed may not be used to impose a particular term." (*Sandoval* at p. 848.) But "where the facts surrounding the charged offense exceed the minimum necessary to establish the elements of the crime, the trial court can use such evidence to aggravate the sentence." (*People v. Castorena* (1996) 51 Cal.App.4th 558, 562.) An aggravating factor is one that "makes the offense distinctively worse than the ordinary" and makes the defendant "deserving of punishment more severe than that merited for other offenders in the same category." (*People v. Black* (2007) 41 Cal.4th 799, 817.)

One valid circumstance in aggravation is enough to support the imposition of the upper term. (*People v. Cruz* (1995) 38 Cal.App.4th 427, 433-434.)

We review the trial court's sentencing decision for abuse of discretion. (*Sandoval*, *supra*, 41 Cal.4th at p. 847.) A trial court abuses its discretion if it "relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision. [Citations.] A failure to exercise discretion may also constitute an abuse of discretion." (*Id*. at pp. 847-848.)

If a trial court gives proper and improper reasons for its choice of sentence, we will set aside the sentence " 'only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper.' " (*People v. Cruz, supra*, 38 Cal.App.4th at pp. 433-434.)

C.    *Analysis*

Defendant was convicted under section 273.5, subdivision (a), which makes it a felony to "willfully inflict[] corporal injury resulting in a traumatic condition" upon a spouse or cohabitant.  "Traumatic condition" is defined as "a condition of the body, such as a wound, or external or internal injury, including, but not limited to, injury as a result of strangulation or suffocation, *whether of a minor or serious nature*, caused by physical force."  (§ 273.5, subds. (a), (d), italics added.)

Section 273.5, subdivision (a), does not require that the injury be aggravated.  Soreness and redness on the victim's face and nose can be a "traumatic condition" under the statute.  (*People v. Wilkins* (1993) 14 Cal.App.4th 761, 767 [finding probable cause to believe defendant had violated section 273.5 where officers observed victim crying, she stated husband had hit her a few times in the face and that her neck and nose were sore, and officers observed redness].)  Bruising, too, can constitute a traumatic condition under this statute.  (*People v. Beasley* (2003) 105 Cal.App.4th 1078, 1085.)

The record in this case showed that when Deputy Sanders contacted April, he "immediately noticed her right cheek was red and swollen" and the "left side of her face was covered in sand," which was consistent with P.G.'s report that defendant had "punched" April and then "wrestled her to the ground" and April's statement that defendant wrestled with her and he "struck her right cheek with his left elbow and hit her other places as well." The trial court could have determined this was evidence enough of "corporal injury resulting in a traumatic injury" under the statute.

But there was more.  Once April was on the ground, defendant began strangling her.  In sentencing defendant to the upper term, the trial court

10

could have taken into account the seriousness of what defendant's son described: seeing defendant with two hands across April's neck when she was lying on her back, seeing her stop struggling or even moving any more, believing she had been killed by defendant. The trial court could have reasonably concluded that beyond punching her, strangling a victim to the point that she appears dead was a sufficient basis to find a threat of great bodily harm or a high degree of callousness and thus a circumstance in aggravation under rule 4.421(a)(1), as the trial court indicated at the sentencing.

We thus conclude that substantial evidence supports the trial court's finding of a circumstance in aggravation. And because only one valid circumstance in aggravation is sufficient to impose an upper term, we do not address defendant's other argument that the trial court erred in finding defendant's past performance on probation was a circumstance in aggravation. Even if his prior performance on probation in Trinity County had been satisfactory (a point barely mentioned in the sentencing hearing), it is clear from the record that the trial court would not have selected a different sentence.

Finally, we reject defendant's alternative argument that the trial court did not exercise its discretion at all. Defendant relies on snippets of the trial court's statements out of context.[7] The hearing transcripts as a whole,

---

[7] Defendant relies on the statement by the trial court that it was "stick[ing] with" the determination it had initially made. This remark, described fully and in context above, does not indicate the court failed to exercise its discretion. Defendant also cites the court's comment "I don't remember exactly why" as evidence of the trial court's "complete failure to carefully consider the appropriate term." This comment was made as the trial court pronounced sentence, addressing defendant's belated request for

11

however, demonstrate the trial court knew it had discretion and exercised it. Although the trial court stated an indicated sentence of four years in August 2019, when probation was revoked and defendant was later sentenced in April 2020, the trial court was fully aware of its sentencing alternatives. As we have described, the court confirmed that it was not bound to the original indicated sentence, expressed interest in reading defense counsel's mitigation statement, and postponed the sentencing a week so all parties and the court could do so. The court exercised its discretion.

## DISPOSITION

The judgment is affirmed.

---

drug court, which the court characterized as "just a little late in the game." The court recalled defendant had "dirty test after dirty test." In the same vein, the court continued on to recall when it first placed defendant on probation. ("And, hopefully, you know, with four years hanging over your head, *I don't remember exactly why*, but my thought, I'll bet, was, wow, with that hanging over his head, that's some motivation. That's a kick in the butt early on that's going to tell him, I don't want to screw up. [¶] But it started off—right off with not complying. And so I regret having to do it. But . . . I do think that the aggravated term is appropriate so that you are . . . sentenced to the aggravated term of four years.") (Italics added.) We need say no more.

12

_____
Miller, J.

WE CONCUR:


_____
Richman, Acting P.J.


_____
Stewart, J.


A160082, *People v. Gruell*


13