Filed 7/29/13  P. v. Pierson CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D061659 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD236309) |
| LISA MARIE PIERSON et al., | |
| Defendants and Appellants. | |

APPEALS from judgments of the Superior Court of San Diego County, Albert T. Harutunian III, Judge.  Affirmed.

Mazur & Mazur and Janice R. Mazur, under appointment by the Court of Appeal, for Defendant and Appellant Pierson.

Cynthia M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant Springs.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Steve Oetting and Andrew Scott Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

## I.

## INTRODUCTION

The People charged appellants Lisa Marie Pierson and Raymond Lavern Springs, Jr., with robbery (count 1) (Pen. Code, § 211);[1]assault by means of force likely to produce great bodily injury (count 2) (§ 245, subd. (a)(l)); vehicle theft (count 3) (Veh. Code, § 10851, subd. (a)); and false imprisonment by violence (count 4; §§ 236, 237, subd. (a)). Additionally, the People charged Springs with rape of an unconscious person (count 5) (§ 261, subd. (a)(4)) and forcible rape (count 6) (§ 261, subd. (a)(2)).

A jury found Pierson guilty of the lesser included offense of grand theft on count 1, not guilty on count 2, and guilty as charged on count 3. The jury was unable to reach a verdict as to count 4 and as to the lesser included offense of simple assault on count 2. The trial court declared a mistrial as to those counts, and dismissed the counts in the interest of justice. The same jury found Springs guilty as charged. The trial court sentenced Pierson to two years in the custody of the sheriff and sentenced Springs to an aggregate term of 14 years four months in state prison.

Appellants claim that the trial court erred in failing to stay execution of their sentences on count 3 for auto theft pursuant to section 654, in light of the trial court's imposition of sentences on count 1 for robbery (Springs) and grand theft (Pierson). Appellants contend that the theft of the victim's car keys formed the basis of their convictions on count 1 and that this conduct was incidental to the criminal objective of

---

[1]     Unless otherwise specified, all subsequent statutory references are to the Penal Code.

2

stealing the victim's car, which formed the basis of their convictions on count 3.   Springs also contends that the trial court erred in relying on the same aggravating factors in imposing sentences on various counts, and that the trial court erred in relying on a stayed count (count 5) in imposing an upper term full strength consecutive sentence on count 6.[2]

We conclude that section 654 did not require the trial court to stay appellants' sentences on count 3, that Springs forfeited his claim that the trial court improperly relied on the same aggravating factors in sentencing him on several different counts, and that any error that the court committed in relying on a stayed count in sentencing Springs on count 6 was harmless.  We therefore affirm the judgments.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The trial*

At trial, the People presented evidence that on August 23, 2011, at approximately 12:30 a.m., the victim, B.K. drove her car to a liquor store a few blocks from her house.[3] Once at the store, B.K. realized that she did not have enough money to buy the bottle of vodka that she had intended to purchase.  B.K. saw appellants exiting the store and asked

---

[2]    In her opening brief, Pierson raised a claim pertaining to the calculation of presentence credits.  However, Pierson filed a notice of abandonment as to that claim, stating that the trial court had corrected the asserted error during the pendency of this appeal.

[3]    B.K. testified that she "struggle[s] with alcoholism," and that she had been drinking heavily on the day of the incident.

them for 50 cents. Springs replied, "Yeah, no problem." B.K. began to walk with appellants, who she believed were walking to their car.

The group eventually ended up in a nearby motel room registered to Pierson. Once inside the room, Danyale Young and Ana Lopez, whom B.K. did not know, joined the group in the room. Springs began asking B.K. sexual questions. B.K. said that she was going to leave. Springs forced B.K. back into her chair and said, " 'You're not leaving.' "

After B.K. continued to ask to be allowed to leave, Lopez asked for B.K.'s cell phone. When B.K. refused to give her phone to Lopez, Lopez grabbed the phone from B.K.'s hand. The group began to demand that B.K. smoke methamphetamine. After B.K. initially refused, Springs and Lopez asked B.K. if she was a police officer. B.K. denied that she was a police officer. In response, Springs ordered B.K. to take off her clothes. Springs then barricaded the door, "slammed [B.K.] down," and ordered her to "get naked." B.K. had unfastened her pants and had started to remove her bra when Springs directed Pierson to rip B.K.'s bra off of her. Pierson complied. After B.K. was naked, Pierson said, " 'That's messed up, just let her put her clothes back on.' " B.K. was allowed to get dressed.

Shortly thereafter, B.K. went into the bathroom with Pierson and Lopez. Once they were in the bathroom, the women hit B.K. repeatedly in the head. Lopez "socked" B.K., rendering her unconscious. When B.K. regained consciousness, Springs and Lopez told B.K. that they needed her car keys and pried the keys from her hands. Springs then punched B.K., rendering her unconscious again.

4

When B.K. regained consciousness, Springs and B.K. were alone in the bedroom. B.K. was on the bed and Springs was having sexual intercourse with her. B.K. "clawed" at Springs, who pulled her up by the hair and said, "Bitch, shut up." Springs then threw her back onto the bed and continued to rape her. After Springs finished raping B.K., he left the room. Shortly thereafter, Springs, Pierson, Lopez and Young left the scene in B.K.'s car.[4]

B.    *Sentencing*

    1.    *Pierson*

At Pierson's sentencing hearing, the trial court discussed with the prosecutor whether section 654 applied with respect to counts 1 and 3, as follows:

> "The court: What was the basis for [count 1], taking the phone and keys, or was it a phone and wallet?
>
> "[The prosecutor]: It's the phone and keys. [The victim] didn't have a wallet.
>
> "The court: So does the fact that it was in part [*sic*], does that raise a 654 issue as to the theft of the car? The jury wasn't asked to provide any distinction as to what the basis for the theft of the person was. So they didn't delineate that it was strictly the phone. And so, I guess, if it was potentially both, is there a 654 issue for a theft that includes theft of keys and then a separate charge for taking the vehicle [with] the keys?
>
> "[The prosecutor]: It is a strong argument. It seems that there would be. [The jury] didn't specifically clarify whether they came back on the phone or the keys. I don't believe it was necessary for them to find her guilty of that count."

---

4    Surveillance video at the motel showed B.K. and appellants arriving at the motel at approximately 1:00 a.m., and Springs, Pierson, Young and Lopez leaving the motel at approximately 4:00 a.m.

After this exchange, the court stated that it would impose the midterm of two years on count 1. In imposing sentence on count 3, the court rejected the application of section 654, as follows:

> "[T]he court will run count three concurrent. I'm not sure, as a matter of law, that count three would be 654 barred as to [count 1], because count one did involve a phone, which I think is a different kind of theft than taking a vehicle. But I'm satisfied that even if it was not 654, concurrent sentencing would be appropriate, considering all relevant circumstances, including that I don't believe that the defendant had a prior prison term."

The court ultimately sentenced Pierson to two years in the custody of the sheriff, comprised of the middle term of two years on count 1, plus a two-year sentence on count 3, to be served concurrently with the sentence on count 1.

2. *Springs*

At a separate sentencing hearing for Springs, the following colloquy occurred pertaining to the potential application of section 654 as to count 3:

> "The court: Are you saying it's 654 barred?
>
> "[Defense counsel]: I would, yes, your honor. The reason being is that we believe it's covered by the robbery.
>
> "The court: Okay. And so I wanted to find out, what is the People's position as to what is or isn't 654 barred?
>
> "[The prosecutor]: Your honor, the People's position is that count 3 would not be. That is a separate and distinct crime from the robbery. The robbery [was of] the keys and the cell phone. And there were separate instances of her being hit that were separate and apart from the force used for the robbery. It's the People's position that count 3 would not be 654 or subsumed by the robbery because the keys and the vehicle were two separate and distinct acts."

6

After discussing another sentencing issue, the court and counsel returned to the subject of whether section 654 applied to count 3:

> "The court: What's your response to the argument that if the robbery was of car keys, then when someone steals somebody's car keys and then drives off in the car, that's part and parcel of the same offense?
>
> "[The prosecutor]: Well, they could have stolen her keys and not actually physically gone and gotten in her car. And given that the keys were stolen early in the evening, there [were three] hours where she was with four of these defendants. The keys were taken relatively soon. The vehicle was not stolen until the very end of the evening after she was raped and Mr. Springs decided that they had to all get out of there. It was at that point that Young and Lopez went and took her vehicle, which was not close in time to the stealing of the keys. And I think that because this was over a [three-]hour period, each crime was committed at different times in that evening. I think [defense counsel's] argument would be stronger if this all happened in 30 minutes, but it didn't.
>
> "[Defense counsel]: May I respond to that briefly, your honor?
>
> "The court: Okay.
>
> "[Defense counsel]: With regards to the robbery of the keys, what's the purpose of robbing someone of their car keys? There's really nothing of value on a key chain aside from the fact that it leads to other things, to a person's car, to open a safe. That's what a key chain is for. It's access. And eventually that access was used. The car could not have been stolen but for the robbery initially of the keys.
>
> "[The prosecutor]: There were also two things stolen from her person, her cell phone and her keys."

After permitting the People and defense counsel to "make any argument you want as to sentencing," the court sentenced Springs. As to count 1, the court selected the upper term of five years. In explaining its reasons for selecting the upper term, the court stated:

> "The court does believe that there are aggravating factors—let me

7

back up and say that on an overall basis of this case, as the court views the case, as the court heard the evidence that was presented during trial, that this case involved a vulnerable victim that was brutally beaten and raped.

"The defendant, I think, seeks to minimize his responsibility and involvement. I think that the evidence in the case establishes that the defendant was the primary wrongdoer in this whole scenario, that he was orchestrating what was going on . . . .

"[¶] . . . [¶]

"On count 1, the court does believe the upper term is appropriate. I believe there are aggravating factors that justify selecting the upper term including that the victim was vulnerable, that the defendant's convictions have become increasing—of increasing seriousness, that he has served prior prison terms, that he was on probation when this crime was committed, that this offense occurred in a situation where the victim was basically being abused and terrorized over an extended period of time. And so I think the upper term is fully supported here."

The court also imposed an upper term of four years on count 2 (assault by means of force likely to produce great bodily injury), but stayed execution of that sentence pursuant to section 654. The court stated, "I selected the upper term of [four] years for the same reasons I just indicated why."

With respect to count 3 (auto theft), the court found that section 654 did not apply, reasoning:

"Count 1 includes theft of a cell phone. If count 1 were purely a theft of keys, I might agree that there would be a 654 bar. But I think count 1 includes theft of a cell phone. And the later taking of the vehicle hours later and driving away with it I think is not subsumed within a [robbery] of . . . multiple items which included keys. I don't think that defendant can steal a number of things from someone and then not be responsible for hours later driving away in the person's vehicle."

8

After determining that section 654 did not apply, the court sentenced Springs to a consecutive term of eight months in prison on count 3 (one-third the two-year midterm). With respect to its decision to impose a consecutive sentence, the court stated:

> "I do believe that a consecutive sentence is appropriate. And so I disagree with probation's . . . recommendation . . . that the defendant is adequately sentenced with other counts . . . . I think this is an extremely serious case."

The court also imposed a consecutive term of eight months in prison on count 4 (false imprisonment by menace) (one-third the two-year midterm), noting that "[the victim] was forced by the conduct of the defendant and co-defendants to remain against her will for hours in a motel room, and there was a robbery that took place in the course of a few minutes . . . ."

The court stayed execution of an upper term eight-year sentence on count 5 (rape of an unconscious person) in light of the court's imposition of a full strength consecutive eight-year upper term sentence on count 6 (forcible rape). In stating its reasons for providing aggravated sentences on counts 5 and 6, the court referred to the aggravating factors that it had cited in connection with count 1. The court sentenced Springs to a total term of 14 years four months in prison.

9

DISCUSSION

A.    *The trial court was not required to stay appellants' sentences on count 3 pursuant to section 654*

Appellants contend that the trial court was required to stay their sentences on count 3 for auto theft because the theft of the victim's car keys, which appellants contend served as the basis for their convictions on count 1, was incidental to the criminal objective of the auto theft.[5]

1.    *Governing law and standard of review*

Section 654 provides in relevant part: "(a) An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision.  An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

Section 654 prohibits multiple punishment where a single criminal act or omission violates more than one penal statute.  This statutory prohibition has been extended to cases in which the defendant engages in an indivisible course of conduct with a single objective, violating several different penal statutes in the process.  (See *Neal v. State of California* (1960) 55 Cal.2d 11, 19.)  "If all of the crimes were merely incidental to, or were the means of accomplishing or facilitating one objective, a defendant may be

---

5    Both appellants raised this claim in their opening briefs.  In addition, Pierson joined in all of the contentions made by Springs in support of this claim.

punished only once. [Citation.] If, however, a defendant had several independent criminal objectives, he may be punished for each crime committed in pursuit of each objective, even though the crimes shared common acts or were parts of an otherwise indivisible course of conduct. [Citation.]" (*People v. Perry* (2007) 154 Cal.App.4th 1521, 1525.)

" 'The determination of whether there was more than one objective is a factual determination, which will not be reversed on appeal unless unsupported by the evidence presented at trial.' [Citations.] '[T]he law gives the trial court broad latitude in making this determination.' [Citation.]" (*People v. Wynn* (2010) 184 Cal.App.4th 1210, 1215.)

The question of whether the trial court erred in failing to stay execution of a sentence under section 654 is not waived on appeal by the failure to raise it in the trial court. (*People v. Bui* (2011) 192 Cal.App.4th 1002, 1013.)

2.   *Application*

Appellants' claims are based primarily on their contention that the theft of the victim's car keys served as the basis for their convictions on count 1. Pierson contends, "[t]he inescapable inference from the record is that the jury's guilty findings on the theft charges against Springs and Pierson [in count 1] were based on theft of the car keys." Similarly, Springs argues his robbery conviction in count 1 "must . . . have been based on the [taking of the car] keys."

In support of this contention, appellants note that during deliberations, the jury asked the court whether a perpetrator could be convicted of robbery and at the same time, an aider and abettor be convicted of a lesser offense of theft, and that the court informed

11

the jury that this would be a permissible verdict. The appellants further observe that with respect to count 1, the jury found Springs guilty of robbery and found Pierson guilty of the lesser included offense of grand theft. Appellants also note that that while the victim testified that Springs and Lopez pried her car keys out of her hands, there was no evidence that Springs directly took the cell phone. Appellants contend that this evidence, when considered in connection with the jury's questions and their verdicts, demonstrates that the jury found that Springs was the direct perpetrator of the robbery based on his taking of the victim's car keys, and that Pierson aided and abetted the lesser offense of theft. We are not persuaded.

To begin with, the jury's question was just that, a question. To conclude that the jury must have based its verdict on the theory of criminal liability posited in its question turns the jury's *question* into a *verdict*. The jury's question merely indicates that one possible theory of liability that the jury considered was that the direct perpetrator of count 1 was guilty of robbery and that the aider and abettor was guilty of a lesser crime. The jury's question does not establish that the jury ultimately based its verdict on such a theory.

We also reject appellants' contention that the jury's verdicts on count 1 finding Springs guilty of robbery and Pierson guilty of the lesser included offense of theft demonstrates that these convictions are based on the taking of the victim's car keys. Appellants reason that the jury would have found Springs and Pierson guilty of the *same* offense if the jury had based its conviction on count 1 on the taking of the victim's phone, because there was no evidence that either Springs or Pierson directly took the phone from

12

the victim. This argument fails because there was other evidence from which the jury could have reasonably found that Springs aided and abetted a *robbery* involving the phone, while Pierson aided and abetted a *theft* of the phone.

B.K. testified that Springs repeatedly used violence against her throughout the evening (e.g. "slamm[ing] her down" while ordering her to take off her clothes, punching her until she was conscious, and pulling her by her hair while raping her). She also testified that Springs was the primary driving force in the commission of the bulk of the crimes committed against her. For example, Springs barricaded the door to the motel room at the beginning of the encounter, directed Pierson to rip off B.K.'s bra, and raped the victim.[6] In addition, B.K. testified that Pierson urged Springs to permit B.K. to put her clothes back on after Springs had ordered her to get naked, and that Pierson had hit her only "a couple of times" during the evening. Based on this evidence, the jury could have reasonably found beyond a reasonable doubt that Springs had used violence in committing crimes against the victim, while having a reasonable doubt whether Pierson was willing to do so. Further, Pierson's contention that "the unrefuted evidence

---

[6]    At Springs' sentencing, the trial court stated that "the evidence in this case establishes that the defendant was the primary wrongdoer in this whole scenario, that he was orchestrating what was going on . . . . I think the evidence demonstrates that the defendant was in control of the situation and was making sure that nothing was happening that wasn't what he wanted to see happen in terms of where [the victim] was going, what [the victim] was doing, what [the victim] was allowed to do."  The court also said that Springs "was the one that everyone, the victim and some of the codefendants in this case, were scared of, and that people were dancing to the defendant's tune."
       In contrast, at Pierson's sentencing, the prosecutor acknowledged that "[Pierson] was mainly acting at the direction of [Springs]."

13

established that [Springs and Pierson] had exactly the same level of culpability with respect to the phone" is not accurate. The People presented evidence that Springs had the victim's phone number stored in the memory of his cell phone. In light of this evidence, the jury could have reasonably found that Springs intended to assist in the taking of the phone by force or fear, while Pierson intended only to assist in the theft of the phone. Accordingly, we reject appellants' argument that the theft of the victim's car keys necessarily served as the basis for their convictions on count 1, and that the trial court was therefore required to stay their sentences on count 3 for auto theft pursuant to section 654.[7]

We also reject appellants' contention that their sentences on count 3 must be stayed pursuant to section 654 because any "ambiguity in the jury verdict result[ed] solely from the manner in which the prosecutor presented its case." (Citing *Downs v. State of California* (1962) 202 Cal.App.2d 609 (*Downs*).) In *Downs*, the evidence presented at trial demonstrated that the defendant and an accomplice entered a building to steal from a safe and that once inside the building, the defendants encountered two janitors whom they restrained while they completed the theft. (*Id.* at p. 611.) The defendant contended that section 654 precluded the trial court from executing a sentence for both the robbery and the burglary. (*Downs*, *supra*, at p. 611.) In arguing against the application of section 654, the State argued that because the burglary was based on an

_____

[7]    In light of our conclusion, we need not consider the People's alternative argument that section 654 does not apply, even assuming that the jury based its verdict on count 1 on the taking of the victim's car keys.

14

allegation of *theft*, the jury could have decided that the burglary was complete before the defendants encountered the janitors, and thus, there was substantial evidence to support a finding that the defendant's intent to commit a *robbery* was separate from his intent to commit a burglary. (*Downs*, *supra*, at p. 614.) The *Downs* court concluded that section 654 applied because there was a lack of substantial evidence that the defendant harbored two separate objectives. In reaching this conclusion, the court reasoned:

> "Here, we think, however, the record does compel a conclusion the plan was preconceived as to the robbery. Regardless of the wording of the information, petitioner entered the telephone company building with the single purpose to rifle its safe, hoping, no doubt, that this could be accomplished without interference, but prepared for that event by carrying a gun which he intended to and did threateningly use to consummate the crime. To urge that these guntoting miscreants had limited their original object to safecracking only, upon the unlikely assumption that nightly janitorial service was not performed in the telephone company building is unrealistic and unsupported by the record. The information, had it been worded with strict accuracy, would have accused petitioner of entering with intent to commit *either theft or robbery* as might become necessary. [¶] Certainly, the question of whether a course of conduct is divisible or indivisible cannot be made to depend upon astuteness of the district attorney in drafting an information." (*Downs, supra,* at pp. 614-615.)

*Downs* supports the proposition that where the evidence establishes that a defendant harbors a *single* objective in committing two crimes, section 654 applies notwithstanding artful pleading by the prosecutor. However, in this case, there is substantial evidence that the defendants held *separate* objectives in taking the victim's

15

phone (count 1)[8] and in taking the victim's car (count 3)).[9]  Nothing in *Downs* suggests

that section 654 applies under these circumstances.  Accordingly, we reject appellants'

contention that section 654 applies in light of a purported "ambiguity" in the verdicts

resulting from the fact that appellants' convictions on count 1 could have arisen from

either of two discrete alleged criminal acts—the theft of the victim's phone or the theft of

her car keys.[10]

Accordingly, we conclude that the trial court was not required to stay appellants'

sentences on count 3 pursuant to section 654.

---

[8]     We rejected above appellants' contention that the record demonstrates that the jury's verdict on count 1 was based on the taking of the victim's car keys.

[9]     Appellants' citation of case law holding that "where a defendant robs his victim *in one continuous transaction* of several items of property, punishment for robbery on the basis of the taking of one of the items and other crimes on the basis of the taking of the other items is not permissible," is not persuasive.  (*People v. Bauer* (1969) 1 Cal.3d 368, 377, italics added.)  There is substantial evidence in the record that the victim's phone was taken at the beginning of an encounter that lasted several hours and that appellants left the scene in the victim's car at the end of the encounter.  Based on this evidence, the trial court could have reasonably found that the taking of the phone and the car were *not* part of one continuous transaction.

[10]    It is well established that the People may present evidence of a defendant's commission of more than one discrete act in support of a single criminal change.  "As a general rule, when violation of a criminal statute is charged and the evidence establishes several acts, any one of which could constitute the crime charged, either the state must select the particular act upon which it relied for the allegation of the information, or the jury must be instructed that it must agree unanimously upon which act to base a verdict of guilty.  [Citation.]"  (*People v. Jennings* (2010) 50 Cal.4th 616, 679.)

16

B.      *Springs forfeited his contention that the trial court erred in relying on the same aggravating factors in imposing sentences on various counts*

Springs claims that the trial court erred in relying on the same aggravating factors in sentencing him to the upper term on counts 1, 2, and 5, imposing consecutive sentences on counts 3 and 4, and imposing a full strength consecutive upper term sentence on count 6.   The People contend that Springs forfeited this claim by failing to raise it in the trial court.

In *People v. Scott* (1994) 9 Cal.4th 331 (*Scott*), the Supreme Court held that "the waiver doctrine should apply to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices." (*Id.* at p. 353.)[11]  The *Scott* court explained, "Included in this category are cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it *doubled-counted a particular sentencing factor*, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons." (*Ibid.,* italics added.)

Springs did not object in the trial court to the trial court's use of the same aggravating factors in sentencing him on various counts.  Accordingly, Springs has forfeited this contention.  We reject Springs's claim that the forfeiture rule does not apply because the trial court purportedly was "fully apprised of [his] argument for imposition of the lower term, concurrent sentencing, and applying section 1170.1 [to] the forcible rape

---

11      Although denominated an issue of "waiver" in *Scott,* the issue may more accurately be characterized as one involving "forfeiture." (*People v. Simon* (2001) 25 Cal.4th 1082, 1097, fn. 9 [" 'Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the "intentional relinquishment or abandonment of a known right." [Citations.]' [Citation.]"].)

17

count." On the contrary, Springs failed to apprise the trial court of the dual-use objection that he seeks to raise on appeal. The fact that Springs raised *other* arguments in support of a lesser sentence in the trial court does not permit him to raise a *new* argument in support of a lesser sentence for the first time on appeal.

C.      *Any error that the trial court committed in relying on a stayed count in sentencing Springs on count 6 is harmless*

Springs contends that the trial court erred in relying on the facts underlying count 5 (rape of an unconscious person) for which the court stayed execution of sentence pursuant to section 654, in imposing a full strength consecutive upper term sentence on count 6 (forcible rape). We conclude that any error was harmless.

1.      *Factual and procedural background*

The trial court stayed execution of the sentence on count 5 pursuant to section 654, reasoning in part as follows, "[W]hen an individual begins raping an unconscious person and that person regains consciousness, [] that is a continuous course of conduct . . . and [] it's all the same intention of raping someone." With respect to count 6, the court imposed sentence as follows:

> "On count 6, the court believes it has the discretion to impose a consecutive or a concurrent term. The court chooses to select a full strength consecutive. I think it is for *the aggravating reasons I indicated earlier*, and also the fact that this is a situation which includes rape of an unconsciousness person and continuing rape of a conscious person. I think that is an aggravating circumstance. And so the court does select the upper term of 8 years and it is full strength consecutive." (Italics added.)

18

Through the italicized language in the preceding quotation, the trial incorporated by reference its statement of six aggravating factors supporting the imposition of an upper term on count 1. (See pt. II.B.2, *ante*.)[12]

2.      *Governing law*

" 'When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper.' [Citation.]" (*People v. Cruz* (1995) 38 Cal.App.4th 427, 433-434.)

3.      *Application*

We assume for purposes of this opinion that the trial court erred in relying on the facts underlying count 5 in imposing Springs's sentence on count 6. However, as Springs acknowledges in his brief, the trial court also relied on *six additional* aggravating factors, and with respect to "every sentencing decision the court made, it imposed the aggravated sentence." Further, it is clear from the trial court's statements at sentencing that the court would have found *additional* aggravating factors in imposing sentence on count 6 if defense counsel had contended that the court had failed to state sufficient aggravating factors. For example, in denying probation, the court stated that even assuming that Springs were eligible for probation, "The court would not find him suitable for probation because of his extremely poor performance on probation and parole . . . ." In light of

---

[12]     In part III.B., *ante*, we concluded that Springs forfeited any contention that the trial court erred in relying on the same aggravating factors in imposing sentences on various counts.

19

these statements, we have no doubt that the court would have concluded that Springs's "prior performance on probation or parole was unsatisfactory" (Cal. Rules of Court, rule 4.421(b)(5)) to support an aggravated term on count 6 if defense counsel had objected to the court's stated reasons for imposing such a term.

In addition, the trial court's statements at sentencing indicate that the trial court viewed Springs as having committed a series of aggravated crimes. As the trial court expressly stated in departing upward from the probation officer's recommended sentence, "I think this is an extremely serious case." Even assuming that the trial court erred in the manner by which it articulated its reasons for imposing an aggravated sentence on count 6, "Based on the trial court's statements at sentencing . . . we conclude it is not reasonably probable it would have imposed any lesser sentence . . . ." (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1373-1374 [concluding that resentencing was not required because if defense counsel had timely objected to alleged improper reasons for imposing the upper term, "the trial court could have, and presumably would have, cited one or more of . . . five [other aggravating] factors as support for its decision to impose [an aggravated sentence]"].)

Accordingly, we conclude that any error that the trial court committed in relying on a stayed count in sentencing Springs on count 6 is harmless.

20

## IV.

## DISPOSITION

The judgments are affirmed.

_____

AARON, J.

WE CONCUR:

_____

NARES, Acting P. J.

_____

HALLER, J.

21