Filed 1/7/14  P. v. Loera CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057131 |
| v. | (Super.Ct.No. RIF1200290) |
| ALEX SALVADOR LOERA, JR., | **OPINION** |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Eric G. Helgesen, Judge (Retired judge of the Tulare Mun. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed in part; reversed in part with directions.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Christopher Beesley and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

Jim Patton was working under the hood of Jose Meza's car when defendant Alex Salvador Loera, Jr. approached him and asked Patton if he thought he was a "bad ass." Defendant held a knife to Patton's throat and threatened to cut him "ear to ear." Still holding the knife in his hand, defendant approached Meza, who was sitting inside the car, and asked Meza if he thought he was also a bad ass. Defendant then demanded that Meza give him a blue bandanna that was in the backseat (presumably because the color was representative of his gang, the Corona Varrio Locos (CVL)).

Defendant was convicted by a Riverside County jury of two counts of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1); counts 1 & 2)[1]; robbery (§ 211; count 3); and active gang participation (§ 186.22, subd. (a); count 4). The jury also found that defendant had served two prior prison terms within the meaning of section 667.5, subdivision (b). Defendant was sentenced to a total state prison sentence of nine years.

Defendant now contends on appeal as follows:

1.     Insufficient evidence was presented to support his conviction of assault on Meza with a deadly weapon.

2.     Insufficient evidence was presented to support the active gang participation conviction under section 186.22, subdivision (a) because he was alone at the time he committed his crimes.

3.     His conviction of assault with a deadly weapon against Meza should have been stayed pursuant to section 654.

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

2

4.      He was erroneously sentenced to the upper term on the robbery conviction and received ineffective assistance of counsel due to his counsel's failure to object to the imposition of the upper term.

We agree that defendant's conviction of active gang participation pursuant to section 186.22, subdivision (a) must be reversed. We affirm the judgment in all other respects.

I

FACTUAL BACKGROUND

In the afternoon of December 26, 2011, 55-year-old Joe Patton was working on Jose Meza's car near the 91 Freeway in Corona. Patton provided mechanic services. He did not have a shop but generally worked in Corona. On that day, he had the hood up on Meza's car and was working on the engine. Meza was sitting in the driver's seat of the car.

As Patton was working on Meza's car, defendant approached him, and immediately said "You think you're a bad ass, don't you?" Patton had seen defendant in the area on prior occasions and defendant had tried to intimidate him. Patton told defendant he was just working on the car. Defendant made a few more remarks to Patton. Suddenly, defendant grabbed Patton's head and held a "pretty good size" knife to his throat. Defendant told Patton, "I'm going to cut your fucking throat ear to ear and watch you bleed." Patton was scared and tried to talk to defendant about why he wanted to hurt him. Defendant held the knife to Patton's throat for about 30 seconds then walked toward Meza.

3

At this time, Meza was still in the driver's seat. He saw defendant hold the knife to Patton's throat. Defendant then approached Meza. Defendant put his hand down to his side. Although the knife was partially covered by defendant's hand, Meza could see the handle of the knife. He believed the knife was foldable and six-inches long. Defendant walked to the driver's side door and stood at the door.

Defendant asked Meza, "You think you're a bad ass too?" Meza responded, "No, I don't. No." At this time, defendant had his hand to his side and was holding the knife in a fist he made around it with his right hand. The blade was open and visible. Meza was scared.

Defendant looked into the car. A blue bandanna was in the backseat of the car. Defendant demanded that Meza give him the bandanna. Meza gave the bandanna to defendant to keep him from becoming more violent. Defendant fled.

Meza called 911. Meza reported that a Hispanic man had pulled a knife on him and his friend. Meza was scared. The 911 dispatcher kept telling Meza that he had to calm down. Meza told the dispatcher that the man put the knife in his shirt.

Defendant's sister lived nearby where the incident occurred and the responding Corona police officer observed defendant sitting outside the house. Defendant briefly went inside to change his shirt but came back out. Meza identified defendant at a field show-up. Inside the house, the officer found a blue bandana. A knife fitting the description given by Meza and Patton was not found in the house.

Corona Police Detective David Vicondoa testified as a gang expert. Defendant was an active member of the CVL criminal street gang. The primary activities of the

4

gang included robbery and assault with a deadly weapon.  Defendant had admitted his gang membership in 2003, 2011, and twice in 2012.  The crimes committed by defendant against Meza and Patton were signature crimes of the CVL.  CVL identified with the color blue.  Blue bandannas were worn by CVL members to show their loyalty to the gang.

II

INSUFFICIENT EVIDENCE OF ASSAULT WITH A DEADLY WEAPON

Defendant contends that the evidence was insufficient to support his conviction of assault with a deadly weapon (§ 245, subd. (a)(1)) because he made no threats of violence toward Meza and did not menace him with the knife.

"Our task is clear.  'On appeal we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence — that is, evidence that is reasonable, credible, and of solid value — from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]  The standard of review is the same in cases in which the People rely mainly on circumstantial evidence. [Citation.]  "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt.  '"If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment."' [Citations.]" [Citation.]' [Citations.]  The

conviction shall stand 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction]."' [Citation.]" (*People v. Cravens* (2012) 53 Cal.4th 500, 507-508.)

Section 245, subdivision (a)(1) provides, in pertinent part that "[a]ny person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm . . . shall be punished by imprisonment in the state prison . . . ."

Assault with a deadly weapon is a general intent crime. (*People v. Rocha* (1971) 3 Cal.3d 893, 899.) "[A] defendant . . . must be aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct." (*People v. Williams* (2001) 26 Cal.4th 779, 788.) "[T]he question of intent for assault is determined by the character of the defendant's willful conduct considered in conjunction with its direct and probable consequences. If one commits an act that by its nature will likely result in physical force on another, the particular intention of committing a battery is thereby subsumed. Since the law seeks to prevent such harm irrespective of any actual purpose to cause it, a general criminal intent or willingness to commit the act satisfies the mens rea requirement for assault." (*People v. Colantuono* (1994) 7 Cal.4th 206, 217)

"As this court explained more than a century ago, 'Holding up a fist in a menacing manner, drawing a sword, or bayonet, presenting a gun at a person who is within its range, have been held to constitute an assault. So, *any other similar act*, accompanied by such circumstances as denote an intention existing at the time, coupled with a present

6

ability of *using actual violence* against the person of another, will be considered an assault.' [Citations.]" (*People v. Colantuono, supra,* 7 Cal.4th at p. 219.)

In *People v. Vorbach* (1984) 151 Cal.App.3d 425, the defendant disputed that the elements of assault with a deadly weapon were proved by the evidence because his mere display of a knife without an accompanying attempt to commit a battery, such as a lunge, was insufficient as a matter of law. (*Id.* at pp. 429-430.) The appellate court rejected the claim, finding that the victim's testimony that the defendant "held the knife in a threatening manner and demanded money is sufficient to satisfy the requisite intent to use the knife. [Citations.]" (*Id.* at p. 429.)

Here, the evidence established that defendant committed assault with a deadly weapon against Meza. Defendant approached Patton and asked him if he thought he was a "bad ass." Defendant held the knife to Patton's throat and threatened to cut him ear to ear. Meza witnessed this assault. Defendant then walked toward Meza with the knife in his hand at his side. The knife was described as a folding knife, but defendant kept the blade extended. Defendant, with the knife in his hand, while standing near the driver's side door of the car in which Meza was seated, asked if he thought he was a "bad ass" too. This threat, along with the fact that defendant continued to hold the knife in his hand and could easily lift his arm to stab Meza, supported the assault with a deadly weapon charge.

Based on the foregoing, substantial evidence supported defendant's conviction of assault with a deadly weapon against Meza.

III

INSUFFICIENT EVIDENCE OF ACTIVE PARTICIPATION IN A GANG

(§ 186.22, SUBDIVISION (a))

Defendant argues that the evidence presented was insufficient to support his conviction for active participation in a street gang pursuant to section 186.22, subdivision (a) based on the recent California Supreme Court case of *People v. Rodriguez* (2012) 55 Cal.4th 1125 (*Rodriguez*). Respondent concedes in its brief that the conviction must be reversed.

"The substantive offense defined in section 186.22[, subdivision] (a) has three elements. Active participation in a criminal street gang, in the sense of participation that is more than nominal or passive, is the first element of the substantive offense defined in section 186.22[, subdivision] (a). The second element is 'knowledge that [the gang's] members engage in or have engaged in a pattern of criminal gang activity,' and the third element is that the person 'willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang.' [Citation.]" (*People v. Lamas* (2007) 42 Cal.4th 516, 523.)

The California Supreme Court has held that the third element of the offense is not satisfied when a gang member commits a felony while acting alone. The word "members," as the Supreme Court explained, "is a plural noun." (*Rodriguez, supra,* 55 Cal.4th at p. 1132.) "Therefore, to satisfy the third element, a defendant must willfully advance, encourage, contribute to, or help *members* of his gang commit felonious criminal conduct. The plain meaning of section 186.22[, subdivision] (a) requires that

8

felonious criminal conduct be committed by at least two gang members, one of whom can include the defendant if he is a gang member." (*Ibid*.) The felonious criminal conduct referred to in the statute must be committed "'by members of that gang.'" (*Id*. at p. 1131.)

Here, there was no evidence presented that a fellow CVL member was with defendant when he put a knife to Patton's throat. Nor was there any other gang member with defendant when he threatened Meza with the knife and took the bandanna from him. As such, we agree that defendant's section 186.22, subdivision (a) conviction must be reversed. Since the trial court stayed the sentence on this count, there is no impact on the resulting sentence in this case.

IV

SECTION 654

Defendant contends that his sentence for the conviction of assault with a deadly weapon against Meza should have been stayed pursuant to section 654 because he was sentenced to the upper term of five years on the robbery of Meza.

At the time of sentencing, defendant's counsel argued that the robbery count against Meza should be the principal count. However, he argued, "I believe that Count 1, which is the 245 violation to the same victim in Count 3 - - my assessment is that Count 1 and Count 3 are 654." The trial court responded, "In terms of Count 1 and 3 being 654, however, it's clear - - and the jury had no issue with this. Those are distinct and separate crimes. The defendant's thought process was different in both of those crimes. They were not committed at the same time. They were two separate distinct events that

9

happened." In addition, the trial court stated, "My recollection of the evidence was - - is that he made the assault initially using the knife, then noticed the bandanna and decided again to steal it. And he still has the knife then at that point. So it was taken by force and fear. But there was force and fear used before he ever had the intent to commit a robbery, before he even knew there was something that he wanted. And on that basis I find that they're not 654." Defendant was sentenced to five years on the robbery of Meza and a consecutive sentence of one year for the assault with a deadly weapon on Meza.

Section 654, subdivision (a) states: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654 applies not only to the same criminal act, but also to an indivisible course of conduct committed pursuant to the same criminal intent or objective. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1207-1209.)

""""Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the *intent and objective* of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one."' [Citation.]" (*People v. Green* (1996) 50 Cal.App.4th 1076, 1084.) A defendant's intent and objective are factual determinations for the trial court, and those determinations must be upheld if supported by substantial evidence. (*Id.* at p. 1085.)

10

Here, it is clear from the facts that the crimes involved separate intents and objectives. Defendant approached Meza with the knife and asked if he was a "bad ass" like Patton. This was immediately after Patton had been approached by defendant and defendant had threatened to kill Patton by cutting his throat from ear to ear. Patton had previous encounters with defendant and defendant tried to intimidate him. Defendant approached Meza and Patton to intimidate them or harm them.

The evidence supports that the robbery was just an afterthought. Defendant looked inside the car and scanned the car. He then demanded the blue bandanna from Meza. Certainly, defendant could not have known the bandanna was in the car when he first approached Patton and Meza. Even defendant's counsel argued that the robbery was an afterthought in closing argument.[2]

Defendant's intent in committing the assault with the deadly weapon was separate from, rather than incidental to, his intent and objective in committing the robbery. Imposing a separate, consecutive sentence for the assault with a deadly weapon offense was thus proper under section 654 and did not constitute dual punishment. The trial court properly imposed separate punishments on counts 1 and 3.

---

[2] Defendant's counsel argued the robbery was an afterthought and was not committed through the use of force or fear. Defendant does not contest the sufficiency of the evidence on the robbery on appeal. It was clear defendant used force or fear to take the bandanna.

V

UPPER TERM

Defendant contends that the trial court erroneously imposed the upper term sentence on his robbery conviction and he received ineffective assistance of counsel due to his counsel's failure to object to the imposition of the upper term on the robbery.

"Establishing a claim of ineffective assistance of counsel requires the defendant to demonstrate (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation prejudiced the defendant, i.e., there is a 'reasonable probability' that, but for counsel's failings, defendant would have obtained a more favorable result. [Citations.] A 'reasonable probability' is one that is enough to undermine confidence in the outcome. [Citations.] [¶] Our review is deferential; we make every effort to avoid the distorting effects of hindsight and to evaluate counsel's conduct from counsel's perspective at the time. [Citation.] A court must indulge a strong presumption that counsel's acts were within the wide range of reasonable professional assistance. [Citation.] . . . .Nevertheless, deference is not abdication; it cannot shield counsel's performance from meaningful scrutiny or automatically validate challenged acts and omissions. [Citation.]" (*People v. Dennis* (1998) 17 Cal.4th 468, 540-541.)

At the time of sentencing, defendant's counsel asked the trial court to impose "a midterm of three years on count 3," which was the robbery charge. Hence, the premise upon which defendant claims ineffective assistance is flawed as counsel did advise the

12

trial court that the midterm was the appropriate sentence on count 3. There was no failure to object.

Defendant contends that his counsel was ineffective for not stating objections to the aggravated terms listed in the probation report and that his counsel made a "weak sentencing presentation" when stronger arguments were available. At the time of sentencing, the trial court noted that it had received the probation report. The trial court also noted there had been an off-the-record discussion on the sentence. The record on appeal does not shed light on the in-chambers discussion.

Defendant's counsel may have had a tactical reason for not further explicating his objection to the upper term sentence as he may have exhausted that argument in chambers. Since we can conceive of this tactical reason for counsel's actions, defendant cannot prove counsel's performance was deficient.

Based on the foregoing, it appears that counsel did object to the upper term sentence. The trial court was on notice that defendant believed the upper term on count 3 was not appropriate. As such, we need not address the issue of prejudice due to ineffective assistance of counsel because it has not been established, but rather, we address whether the trial court abused its discretion by imposing the upper term on the robbery.

The trial court stated in sentencing, "I have reviewed the probation report in terms of the factors in aggravation and concur that there were none found in mitigation." The probation report listed the following aggravating factors: (1) the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high

13

degree of cruelty, viciousness, or callousness (Cal. Rules of Court, rule 4.421(a)(1)); (2) the manner in which the crime was carried out indicates planning, sophistication, or professionalism (*id.*, rule 4.421(a)(8)); (3) the defendant had engaged in violent conduct that indicates a serious danger to society (*id.*, rule 4.421(b)(1)); (4) the defendant's prior convictions as an adult or as a juvenile are numerous or of increasing seriousness (*id.*, rule 4.421(b)(2)); (5) the defendant had served a prior prison term (noting it was used as an enhancement) (*id.*, rule 4.421(b)(3)); (6) the defendant was on probation or parole when the crime was committed (*id.*, rule 4.421(b)(4)); and (7) the defendant's prior performance on probation or parole was unsatisfactory *(id.*, rule 4.421(b)(5)).

"'Sentencing courts have wide discretion in weighing aggravating and mitigating factors . . . .'" (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1582.)  "[A] trial court is free to base an upper term sentence upon any aggravating circumstance that the court deems significant, subject to specific prohibitions.  [Citations.]  The [trial] court's discretion to identify aggravating circumstances is otherwise limited only by the requirement that they be 'reasonably related to the decision being made.'  [Citation.]" (*People v. Sandoval* (2007) 41 Cal.4th 825, 848, fn. omitted.)  "In making such sentencing choices, the trial court need only 'state [its] reasons' [citation]; it is not required to identify aggravating and mitigating factors, apply a preponderance of the evidence standard, or specify the 'ultimate facts' that 'justify[ ] the term selected.' [Citations.]  Rather, the court must 'state in simple language the primary factor or factors that support the exercise of discretion.' [Citation.]" (*Id.* at pp. 850-851.)  It is clear here

14

that the trial court agreed with the probation department's assessment of the aggravating and mitigating factors.

Despite the numerous factors listed in the probation report, a single factor in aggravation is sufficient to justify the upper term. (*People v. Cruz* (1995) 38 Cal.App.4th 427, 433.) We review the trial court's sentencing decision for an abuse of discretion. (See *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977-978.)

Here, defendant held a knife to Patton's throat and threatened to cut him ear to ear. He then approached Meza, threatening him with the knife. Approaching these two men in broad daylight and threatening them as he did showed his violent conduct was a danger to society (Cal. Rules of Court, rule 4.421(b)(1)). In addition, he had an extensive prior criminal history and performed poorly on his prior probation and parole. (*Id.*, rule 4.421 (b)(2) & (b)(5)). These factors alone justified the upper term.

There were ample aggravating factors and no mitigating factors to support the upper term on count 3. The trial court did not abuse its discretion.

## VI

## DISPOSITION

We strike defendant's conviction of active gang participation pursuant to section 186.22, subdivision (a) in count 4. We order the clerk of the Riverside County Superior Court to prepare an amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

<u>RICHLI</u>
J.

We concur:

<u>MCKINSTER</u>
Acting P. J.

<u>MILLER</u>
J.

16