Filed 1/26/15  P. v. Rios CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058331 |
| v. | (Super.Ct.No. RIF1201527) |
| MIKE LUIS RIOS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Gary B. Tranbarger, Judge.  Affirmed in part; reversed in part.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Respondent.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, and Elizabeth M. Carino, Deputy Attorneys General, for Plaintiff and Respondent.

I

INTRODUCTION

A jury convicted defendant Mike Luis Rios, a former Moreno Valley school board member, of 17 criminal counts for pimping and pandering—counts 1, 5-8 (B.E.); 10, 15-19 (V.C.); 20, 23-25 (N.H.); 28 (H.P.); and 29 (A.H.)—and six more counts, counts 30-35, for insurance fraud. (Pen. Code, §§ 266h, 266i, and 550.)[1] The jury's verdict was based on overwhelming direct evidence of defendant's crimes. The court sentenced defendant to prison for 14 years four months.

On appeal, defendant successfully argues he could only be convicted of single, not multiple, counts of pimping as to each of the women involved. The prosecution concedes this point. Additionally, defendant contends the pandering convictions on counts 28 and 29 should be reversed because defendant did not successfully solicit two women, H.P. and A.H., to participate in prostitution. Defendant also asserts various instructional errors and ineffective assistance of counsel. He does not challenge the insurance fraud convictions. We reverse nine of the pimping convictions (counts 6-8, 16-19, 24-25). Otherwise, we affirm the remainder of the judgment.[2]

---

[1] All statutory references are to the Penal Code.
[2] We deny the petition for writ of habeas corpus. (*Davis v. United States* (2011) ___ U.S. ___ [180 L. Ed. 2d, 131 S.Ct. 2419].)

II

STATEMENT OF FACTS

A. *Background*

In 2011 and 2012, defendant operated a prostitution ring from his house in Moreno Valley. He recruited several women to work for him as prostitutes and photographed them at his house either dressed in lingerie or unclothed. He posted advertisements on Internet websites, with photographs, vague descriptions of services, and a phone number. The ads did not mention "stripping" or "massages."

Defendant used a prepaid cell phone to book appointments. The prostitutes waited at defendant's house for clients to call. Defendant would drive the women to a Regency Inn motel to meet clients.

A prosecution expert testified that vague Internet ads and prepaid cell phones are commonly used by pimps and prostitutes to elude police. He explained an "out-call" is when the prostitute goes to the client and an "in-call" is when the client comes to a prostitute. A prostitute who works for a pimp is "in pocket." A prostitute who works independently is "out of pocket."

B. *Pimping and Pandering of B.E. (Counts 1, 5-8)*

In January 2012, B.E. was 18 years old and already a prostitute when V.C. introduced her to defendant, who identified himself as a politician for a school. Defendant asked B.E. to work for him and offered to split what she earned. He asked her to recruit other prostitutes. Defendant photographed B.E. for online ads. Defendant drove

3

B.E. to her appointments and supplied her with condoms from his car's glove compartment. Afterwards, they shared the money. B.E. testified that she worked for defendant for a year and had sex between 3 and 40 times.

C. *Pimping and Pandering of V.C. (Counts 10, 15-19)*

In January 2012, defendant approached V.C., a 19-year-old student. He displayed his school board credentials and offered to help her obtain her diploma. When V.C. called the number on his business card, defendant asked V.C. to work for him and to help him recruit prostitutes. He needed money for his school board campaign. He proposed they split V.C.'s earnings and she agreed to work for him. In exchange, defendant gave V.C. the use of his home, car, and electronics. Defendant never discussed stripping with her.

Defendant took lingerie photographs of V.C. which he used in ads. Defendant gave V.C. a cell phone to book appointments for herself and the other prostitutes. Defendant rented motel rooms for the appointments.

V.C. worked for about two months, engaged in five to ten acts of prostitution, and earned several hundred dollars for each act. Defendant drove her to her appointments in his white Mercedes and supplied her with condoms from the glove compartment. When she returned to the car, defendant asked her to describe the sexual acts she performed and he took half her earnings.

*D. Pimping and Pandering of N.H. (Counts 20, 23-25)*

In January 2012, N.H. answered defendant's advertisement for a receptionist's job. N.H. knew defendant was a school board member. Defendant told N.H. her job would be to answer phone calls and make appointments for men "to spend time with" the women or girls. N.H. would also have to pose for sexy photographs to be used in massage advertisements. Defendant offered to let N.H. and her children live in his house in exchange for half her earnings and she accepted.

During two weeks in January and February 2012, N.H. had sex three or four times with clients. Defendant drove her to the appointments and supplied her with condoms from the glove compartment. They split the money paid by the client.

*E. Pandering of H.P. (Count 28)*

Defendant responded to an advertisement posted by H.P., who was a 17-year-old prostitute. Defendant told H.P. his wife had been deported and he needed to replace her income.[3] Later that day, H.P. asked to borrow defendant's Jetta. She told him she was 21 years old.

The next day, H.P. began living at defendant's house. Defendant had asked her to work as a stripper and a prostitute and to recruit others. H.P. denied working for defendant as a prostitute. Nevertheless, she continued to live with him and to work as a prostitute. Defendant paid for H.P.'s advertisements and her cell phone bills. H.P. used

---

[3] Apparently, defendant's wife also worked as a prostitute.

5

defendant's car to make "out calls" although she was not licensed to drive. Defendant asked for part of her earnings but she denied giving defendant any money.

## F. Pandering of A.H. (Count 29)

In January 2012, defendant approached A.H., who was working as a bartender, and solicited her to work as a prostitute. Defendant promised she would earn between $500 and $1,000 to be split with him. A.H. declined. She also refused to solicit other women to act as prostitutes.

## G. Insurance Fraud (Counts 30-35)

H.P. was in a single-car accident in December 2011 while driving defendant's Jetta. Defendant told the claims adjuster that, when he was driving, he was injured in a hit-and-run accident and the car was totaled. He sold the car before the insurance company could inspect it. Defendant coached H.P. and her passenger about what to tell the claims adjuster.

## H. Defendant's Evidence

Defendant was an elected member of the board of the Moreno Valley Unified School District. He denied being a pimp. A woman who defendant dated in 2011 and 2012 testified that he never asked her to be a prostitute.

After his wife was deported, defendant operated a stripping and massage business in November and December 2011. He hired women to work as strippers. He photographed the women and created advertisements, using vague language. He drove

6

the women to their appointments. He denied keeping condoms in the glove compartment.

Defendant and his friend, Richard Quinonez, testified about the circumstances of the Jetta accident. Defendant admitted he lied to the police and the insurance company.

## III

## THE NINE PIMPING CONVICTIONS

The parties agree that defendant could "only be convicted of one count of pimping per prostitute" because pimping is a continuous offense. (*People v. Culuko* (2000) 78 Cal.App.4th 307, 325; *People v. Lewis* (1978) 77 Cal.App.3d 455, 461-462.) The evidence showed that B.E., V.C., and N.H. worked for defendant as prostitutes continuously from November or December 2011 until March 2012. Defendant could only be convicted of three counts of pimping, one for each woman (counts 5, 15, and 23). It is not disputed that the other nine pimping counts (counts 6-8, 16-19, and 24-25) must be reversed.

## IV

## COUNTS 28 AND 29

H.P., a minor, was already working as a prostitute when defendant tried to recruit her to work for him. H.P. testified that she never worked for defendant although she continued to work as a prostitute while living in defendant's house and allowing him to pay her expenses. A.H. refused defendant's solicitation to work for him. Consequently, defendant argues that, because he did not succeed in convincing H.P. and A.H. to work

7

for him as prostitutes, he could not be convicted of pandering by procurement on counts 28 and 29 under section 266i, subdivision (a):  ". . . any person who does any of the following is guilty of pandering, a felony, and shall be punishable by imprisonment in the state prison for three, four, or six years:  [¶]  (1) Procures another person for the purpose of prostitution."  Defendant also contends there was related instructional error.

The People agree that a procurement conviction may require the offender successfully persuade a person to act as a prostitute.  (*People v. Bradshaw* (1973) 31 Cal.App.3d 421, 426.)  However, an alternative is section 266i, subdivision (a)(2), providing that it is pandering by encouragement if a person "[b]y promises, threats, violence, or by any device or scheme, causes, induces, persuades, or encourages another person to become a prostitute."  That part of the statute does not require a successful solicitation:  "The statute is clear that the crime of pandering is complete when the defendant 'encourages another person to become a prostitute' by 'promises, threats, violence, or by any device or scheme . . . .'  (§ 266i, subd. (a)(2).)  There is no requirement that defendant succeed.  (*Bradshaw, supra*, 31 Cal.App.3d at p. 425.)  Nor is there a requirement that, in selecting his targets, the panderer choose only those who present a high probability of success.  Again, the focus is on the actions and intent of the panderer, not the target."  (*People v. Zambia* (2011) 51 Cal.4th 965, 981, fn. 8.)

Throughout the trial the two subdivisions of section 266i, (a)(1) and (a)(2), were treated somewhat interchangeably. The information charged defendant with violations of section 266i on counts 28 and 29.[4] The jury instruction, using the language of subdivision (a)(2), referred to persuading or influencing a person to be a prostitute. The jury verdicts found defendant guilty on counts 28 and 29 of section 266i, subdivision (a).

It is undeniable that defendant encouraged A.H. and H.P. to work as prostitutes by promising them various benefits, including living at his house and using his cars. (*People v. Hashimoto* (1976) 54 Cal.App.3d 862, 865-867.) A.H., of course refused defendant. However, even though H.P. claimed she did not work for defendant, she lived at his house, used his car, and allowed him to pay her prostitution-related expenses. Defendant's own testimony established that he made promises to the women he solicited. Thus, the People argue counts 28 and 29 are supported by substantial evidence of a violation of section 266i, subdivision (a)(2).

A conviction under section 266i, subdivision (a)(2), was authorized under the charging language of the information. Based on substantial evidence, the jury found all the elements necessary to convict defendant on the theory of pandering by encouragement. (*People v. Lewis* (2006) 139 Cal.App.4th 874, 884.) We agree there is substantial evidence defendant committed pandering by encouragement and therefore any

---

[4] Count 28's reference to section 266i, subdivision (b)(1), applies because H.P. was a minor but it is inclusive of section 266i, subdivision (a).

instructional error on these counts was harmless beyond a reasonable doubt. (*People v. Flood* (1998) 18 Cal.4th 470, 494.) The purpose of section 266i to combat "the social evil of pandering" is well-served by upholding the convictions under counts 28 and 29. (*People v. Montgomery* (1941) 47 Cal.App.2d 1, 24.)

V

CALCRIM NO. 224

Because the case was based almost entirely on direct testimony, the trial court rejected the defense request to give CALCRIM No. 224 involving how to evaluate circumstantial evidence. Instead, the court gave CALCRIM No. 223, instructing the jury that both direct and circumstantial evidence are acceptable. The court explained that it is direct evidence if a witness sees a jet plane fly across the sky and it is circumstantial evidence if the witness sees a jet's contrail but not the jet itself.

Here, as described above, five witnesses testified that defendant solicited them to work as prostitutes, offering his house and car in exchange for splitting the money they earned. Defendant also photographed the women, posted the advertisements, arranged for appointments, transported the women, and supplied them with prophylactics. All of this information was established through direct testimony. There was actually little, if any, circumstantial evidence that contradicted or altered the direct testimony.

Instead, defendant contended that he operated a stripping and massage business, not prostitution, and the advertisements were vague about what services were being offered. For these reasons, defendant's premise that significant circumstantial evidence

10

was offered at trial—and that the jury should have been instructed about how to evaluate it—is demonstrably wrong. An instruction on circumstantial evidence is not required where the proof of defendant's guilt is shown almost entirely by direct evidence. (*People v. Williams* (1984) 162 Cal.App.3d 869, 875.) We reject defendant's assertion on appeal that the prosecution's case "rested to a substantial degree upon circumstantial evidence." (*People v. Marquez* (1992) 1 Cal.4th 553, 577.)

We also reject defendant's related challenge to the trial court's explanation of the distinction between direct and circumstantial evidence using the example of a jet and a jet's contrail as alternative ways of showing jet flight. It is not plausible that a jury would have failed to understand what the trial court meant by its example. To the extent we can understand it, defendant offers the strained criticism that a contrail "is only circumstantial evidence [of a jet flying] that such might be a reasonable conclusion when considered in conjunction with other evidence." Certainly the jury would not have been misled by the trial court's instruction into not considering "any other facts," as defendant warns. We conclude the trial court did not err in not giving CALCRIM No. 224 and in giving a modified version of CALCRIM No. 223.

VI

OTHER INSTRUCTION

Defendant also argues the court erred by not giving an instruction sua sponte on defendant's theory of the case that stripping or massage did not constitute pimping or pandering. Even if there was any merit to this claim—which there is not—any possible

11

error was harmless. (*People v. Breverman* (1998) 19 Cal.4th 142, 176-177.) The evidence was overwhelming that defendant encouraged five people, including a minor, to be prostitutes. The jury was well-informed about what constitutes pandering and pimping and that defendant claimed he was operating a business involving stripping and massage, not prostitution. It is not reasonably probably defendant could have obtained a more favorable result. For the same reason, defendant cannot establish ineffective assistance of counsel. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1052-1053.)

VII

DISPOSITION

We reverse nine of the pimping convictions (counts 6-8, 16-19, 24-25). Otherwise, we affirm the remainder of the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

HOLLENHORST
Acting P. J.

KING
J.

12